## JOHN CALLAHAN v. STATE.

No. A-6599.  Opinion Filed March 30, 1929.
(276 Pac. 494.)

Wieck & Armstrong, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Kay County, on a charge of having possession and control of narcotic drugs, and was sentenced to imprisonment in the state penitentiary for a period of 7 years and to pay a fine of $500. From the judgment and sentence, defendant has appealed to this court for review by petition in error and case-made, which petition in error and case-made were filed on May 7, 1927. On November 4, 1927, the Attorney General filed his motion to dismiss this appeal on the ground that the defendant had been convicted in the United States District Court for the District of Kansas, Second Division, and sentenced to serve a term of one year imprisonment in the Sedgwick county jail in Wichita, Kan., in which said jail said plaintiff in error was then imprisoned, and supported the motion by attaching a certified copy of the conviction and sentence of defendant.

On November 16, 1927, the defendant filed response to the motion of the state to dismiss, in which motion he admits that the defendant had been convicted, but alleged and stated his time would be out before a decision would be rendered in this case, and that the defendant would be willing to surrender himself to the court and abide by any judgment or order that might be entered.

On February 23, 1929, more than a year after this

response was filed, the defendant having failed to file any showing that he had returned to the state and was within the jurisdiction of the court so he could be reached by the process of the court, the motion and response was considered by this court, and the appeal dismissed.

March 5, 1929, the defendant filed his motion to reinstate the appeal, in which motion he alleges, in substance, that, in a conversation with a representative of the Attorney General, the representative stated under the circumstances the state of Oklahoma would waive the question of plaintiff in error remaining out of the state of Oklahoma during the pendency of his appeal, and that said conversation between the said representative of the said office and attorneys for plaintiff in error was discussed with the presiding judge of the Criminal Court of Appeals at that time, and it was understood that the motion to dismiss would not be pressed. The defendant further shows in this motion to reinstate that he relied upon what his attorney advised him, and has since served out his time in Kansas and has remained at his home and residence at Wichita, in the state of Kansas, and now offers to appear in the state of Oklahoma and before the Criminial Court of Appeals of Oklahoma, at any time designated. The case has been briefed by the defendant and by the state. The motion to reinstate is therefore granted, and the case will be considered on its merits.

The testimony on behalf of the state is, in substance, as follows: H. J. Noonan, called as a witness, testified that he was court clerk on the 18th day of July, 1926; the witness identified the record of the preliminary trial had in the county court of Kay county, and stated that State Exhibit 1, which is page 69 of the criminal court docket No. 13, is the docket of a case that was filed in the county court of John Callahan, Claude Henderson, and Mart Killion, which docket showed defendant arraigned, waived preliminary trial as to John Callahan, filing and approving

bond of John Callahan. The defendant objected, and the objection was overruled and exceptions saved. The witness further testified that the defendant was arraigned September 13, 1926, and entered his plea of not guilty. The defendant Callahan gave bond on July 21, in the sum of $1,500 for his appearance in the district court.

F. L. Irwin, called as a witness for the state, testified, in substance: My nickname is Doc; that on the 18th day of July I was a police officer in Ponca City; that I saw the defendant about 11 o'clock at night when he came to a filling station; that a fellow by the name of Henderson and one named Killion were with him; I saw Henderson come to the filling station with a can to get some gasoline; about ten minutes thereafter the defendant Killion and Henderson came to the station; when they came in I walked over to them and started a conversation with them and sent a fellow to get some help to take three of them to the police station (Mr. Armstrong objected to this as immaterial, the objection was overruled and exceptions saved); they told me they were from Wichita, Kan.; defendant, Callahan, was talking to me more than any of them; they had a lot of cooking utensils in the car, an old coat, and I judge a gallon thermos bottle; they represented they were going on a camping trip; they were taken down to the police station and put in jail; Bob Hall and I assisted Mr. Callahan into jail; I filed a charge against Callahan being drunk and driving a car; there was a small amount of whisky in what looked to be a ginger ale bottle; from the time I told them we were going to take them to jail neither Henderson or Killion were in the front seat of the car; we did not search the car at the filling station at the time of their arrest; we took the car to the police station and there I partially searched it.

Dan Fulson testified to being a police officer on the 19th day of July, 1926; he first saw the defendant at the

filling station; he seemed to be drinking a little, but he was not drunk; the car was taken to the police station.

Raymond Trapp also testified that on the night of July 19, 1926, he was night sergeant at the police station; that early the next morning he made a search of the Chevrolet touring car of the defendant, something after 5 o'clock; there was a tin can in the pocket to the door of the front seat; the can was offered in evidence and identified by the witness as being the can found in the front pocket of defendant's car.

R. L. Hall was called as a witness and testified as to the same facts as did the witness Trapp; that they found the can in the pocket of defendant's car, which had been brought to the police station at the time defendant was brought, and each of the witnesses testified defendant had been intoxicated. This is, in substance, all of the testimony offered by the state.

At the close of the state's testimony, the defendant moved the court to direct a verdict of not guilty, on the ground and for the reason that the evidence offered and introduced on behalf of the state is wholly insufficient to justify the jury returning a verdict of guilty against the defendant, John Callahan, which was overruled, and defendant excepted.

The defendant then called Dr. A. L. Hazen as a witness. He testified as to the effects of morphine upon a person, and that he could detect and tell if a man was addicted to morphine, and in his opinion the defendant was not an addict to the use of morphine. He based this opinion on the general appearance, and upon his experience as a practicing physician with those who are addicted to the use of morphine. The defendant then questioned the doctor as to the effects of a shot, to show where the shot was on a certain part of the anatomy that it would cause the person in his movements to have a tendency to wabble similar to

one intoxicated. This was all the testimony offered by the defendant.

Several separate and distinct errors have been assigned by the defendant. The first assignment argued by the defendant is that the court erred in admitting State Exhibit A, which was a can found in the pocket of the car of the defendant after it had been driven down to the police station. The defendant alleges that State Exhibit A was inadmissible, for the reason that, after the defendant was arrested and incarcerated in jail and his car was driven down to the police station, it was five hours or more before the morphine was found in the door pocket of defendant's car. The defendant insists that the search was too remote from the time the defendant was arrested and incarcerated to be admissible as evidence in the case, arguing that the officers could not return at some future time, whether it be an hour or a month later, and continue the search under the original authority when they arrested the defendant, and cites Coffelt v. State, 36 Okla. Cr. 365, 254 P. 760. An examination of the Coffelt v. State, supra, shows that the facts in that case are very different from the facts in this case. In the Coffelt Case it was some days after the arrest of the defendant before they went back to search his house and premises. In the case at bar the defendant's car was taken to the police station and remained in the possession and charge of the officers parked just outside said police station, where the car was under the supervision of the officers at all times from the time the defendant was arrested until the search was made when it was claimed the morphine was found.

We hold that the search in this case was proper, and that the evidence secured by reason of the search of the car under the circumstances in this case was properly admitted. The search in which the officers found the morphine in the door pocket would be construed as a continuance of the search; the car being in the possession of

the officers at the time of the arrest of the defendant on a drunken charge and driven to the police station. The car had not been in the possession of any one else in the interim, and the record discloses no one had an opportunity to place anything in the car after it was taken into the custody of the officers until the morphine was found. It might be argued that the admission of the morphine found was inadmissible had the car been left at the home of the defendant, or some other place, and the officers had returned and searched it, but, where the facts show the continued possession of the car by the officers, the court did not err in admitting the evidence.

It is next urged by the defendant that the court erred in overruling his motion to quash the information filed in said case which was introduced and urged before he announced ready for trial, to which ruling of the court the defendant duly excepted.

In overruling the motion of the defendant to quash the information filed, the court made the following finding:

"The record is rather incomplete and has not been handled in the proper manner so far as the formalities are concerned. When a preliminary is had in the county court, it should be certified by the magistrate to the clerk of the district court in the same manner that it would if some magistrate in some other part of the country was holding the preliminary hearing, and the transcript should be accompanied by such other documents, such as the warrant, etc., in the case, and while perhaps the endorsements on the back of the complaint would be sufficient to hold the defendant, I am inclined to think that the proper way would be for the magistrate to make a certificate to the correctness and as to what was done and that should be filed with the court clerk. As I say, there might have been a magistrate in Ponca City, conducted the preliminary hearing and then the only way, for instance, that magistrate in Ponca City, if he has a preliminary hearing, could make it sufficiently known or

get it into this court would be to file it with the court clerk. Now, the fact that the same person happens to be clerk of both courts does not relieve or change the duties even of the magistrate or the clerk. However, it being so apparent from the records that we have here and which have been introduced in evidence, that the defendant did waive his preliminary hearing in the county court, and it appearing that all records pertaining to the case were such as were entered, were filed with the court clerk of this court, and it further appearing that the defendant was arraigned in this court on September 13th, 1926, and entered a demurrer to the information which was overruled, and thereupon a plea of not guilty entered, and without having made any motion to quash or any complaint as to the insufficiency of the record in the county court, or before the committing magistrate; and it appearing that the case has been heretofore set for trial and continued on application of the defendant, still without any objection being raised to the sufficiency of the record before the magistrate, and without any motion to quash or to set it aside, the court finds that the defendant has waived any irregularity in the proceedings had before the committing magistrate or in certifying it to the court. Therefore, the motion to quash is overruled."

The defendant duly excepted to the action of the court in overruling his motion to quash the information, and then presented his motion to suppress the evidence, and the court withheld the same until the evidence was presented in order that he might know what the evidence was, and the case proceeded to trial.

The defendant in his brief states that, considering the testimony of the court clerk and the documents introduced in the records, consisting of the original complaint and the criminal court docket, he is compelled to arrive at the conclusion that nothing with reference to the preliminary hearing or the waiving of the same has been filed in the district court as to John Callahan, in this case, which would authorize the county attorney to file

the information alleged on a felony charge against the defendant.

Under the constitutional provision (section 17, art. 2) and our criminal procedure, it is the fact that there was a preliminary examination held or a waiver thereof and a judicial determination thereon by the examining magistrate that the offense charged in the complaint as shown by the examination has been committed and that there is sufficient cause to believe the defendant guilty thereof that authorizes the county attorney to file an information for the offense charged in the complaint, when examination has been waived, for which the defendant was held to answer. Muldrow v. State, 16 Okla. Cr. 549, 185 P. 332.

The trial court found upon a hearing that the defendant in this case had waived his preliminary examination and that he had pleaded to the merits of the information before filing his motion to quash the same, and that by his demurring to the information and his plea of not guilty he waived any irregularity in the preliminary hearing. We hold that the court did not err in overruling the motion to quash the information, for the reason that the motion came too late, and that the irregularity of the examining magistrate in failing to indorse on the preliminary complaint filed in the district court the fact that this defendant had waived the preliminary examination was itself waived by the defendant when he demurred to the information and then entered his plea of not guilty before the motion to quash the information was interposed. However, when the motion to quash the information was filed, it would have been better practice for the district court to have called the county judge, the examining magistrate in this case, and have had him make the proper indorsements on the original complaint showing the defendant had waived the preliminary examination and there was probable cause to

believe him guilty of the offense charged and that he was held to the district court for trial upon bond.

It is further contended by the defendant that the verdict upon which the judgment is based is contrary to law, and that the court erred in overruling defendant's motion for a new trial. Under this assignment it is urged by the defendant the court erred in instructing the jury as follows:

"You are instructed that if you find the defendant guilty you must also by your verdict fix his punishment, which should be a fine of not less than $500 and not more than $5,000, and imprisonment for not less than one year nor more than seven years."

From an examination of the record it is disclosed that no exception was taken to the instruction quoted by the defendant; therefore we must then look to the statute to determine whether or not the court committed a fundamental error in giving this instruction. Section 8888, Comp. Stat. 1921, providing a penalty for the offense for which the defendant was convicted, is as follows:

"Any person who violates any of the requirements or provisions of this act shall, upon conviction, be deemed guilty of a felony and be fined not less than five hundred dollars nor more than five thousand dollars and shall be imprisoned not less than one year nor more than seven years, or both."

This court, in Ex parte Clarke, 30 Okla. Cr. 259, 236 P. 66, construed the section 8888, supra, as follows:

Subdivision 3: "We now pass to the consideration of the language of the statute, providing for a fine and confinement, or both. Does this statute provide for a fine and confinement, in the conjunctive; or does it mean either the one or the other, or both, in the discretion of the court or jury? Applying a well-known principle of statutory construction, to wit, that, where a statute is susceptible of different constructions, that construction should be adopted which gives effect to every phrase and

portion of the act if such construction is rational and in keeping with the purposes and objects to be attained, to give effect to the phrase, 'or both' we must construe the conjunctive 'and' in this case to mean the disjunctive 'or.' 25 R. C. L. Statutes, §§ 246, 247.

"In ambiguous writings the word 'or' is sometimes construed to mean 'and'; more frequently the word 'and' is construed to mean 'or.'

"The court will adopt the appropriate construction indicated by the context and the purposes of the act. State ex rel. Caldwell v. Hooker, 22 Okla. 713, 98 P. 964; Williams v. U. S., 17 Okla. 28, 87 P. 647; 25 R. C. L. 917; 1 Bouv. Law Dict. 194; extended notes and annotations to Janney v. Sprigg [7 Gill (Md.) 197] 48 Am. Dec. [557] 573; 1 Words and Phrases, First Series, p. 389; 1 Words and Phrases, Second Series, p. 208.

"Giving effect to the phrase 'or both' is equivalent to saying that the punishment may be fine, or imprisonment, or both fine and imprisonment, and that the conjunction 'and' in this case means 'or.' It has been the policy of our Legislature, in providing for punishment of offenders, to fix a maximum and a minimum punishment, so that the court or jury may exercise a wise, humane discretion to fit each particular case. In doing this the moral responsibility, the age and character of the offender, and other factors, may properly be considered. It is manifest that some persons who have been found guilty of violating the Narcotic Drug Act (Comp. Stat. 1921, §§ 8886-8888), should be dealt with most severely, while in other cases the punishment should be light. Such construction is in keeping with another rule of statutory construction, to wit, that, where the terms of a penal statute relating to the severity or character of the punishment are ambiguous, such provisions must be construed most favorably to the accused. 21 R. C. L. 209; Ex parte McClure, 6 Okla. Cr. 241, 118 P. 591, supra.

"For these reasons we construe this statute to mean that the penalty for the offense for which the petitioner was convicted may be a fine, or imprisonment, or both."

It was the duty of the court to correctly instruct the jury as to the punishment to be imposed upon the de-

fendant should the jury find him guilty. In this case the court in its instruction erroneously advised the jury as to the punishment to be inflicted upon the defendant. The court should have instructed the jury in the alternative, advising it that it should fix the punishment at a fine of not less than $500 nor more than $5,000, or by imprisonment in the state penitentiary for not less than one year nor more than seven years, or both such fine and imprisonment. Ex parte Clarke, supra; Brady v. State, 36 Okla. Cr. 325, 254 P. 513.

The failure of the defendant to reserve an exception to the giving of the instruction as to the punishment to be imposed upon the defendant, and his failure to request the court to give a special instruction correctly stating the law, amounts to a waiver, and the question raised by the defendant is not properly before this court for consideration.

Upon a consideration of the entire record, we find no error requiring a reversal. The judgment will be modified by remitting the fine of $500 against the defendant, and, as so modified, the case is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.