## EARL SKINNER v. STATE.

No. A-9438. Feb. 10, 1939.
(87 P. 2d 341.)

John T. Levergood, of Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Thos. C. Wyatt, Co. Atty., of Shawnee, for the State.

BAREFOOT, J. The defendant, Earl Skinner, was convicted in the county court of Pottawatomie county, of the unlawful possession of intoxicating liquors, and was assessed a fine of $250, and sentenced to serve 60 days in the county jail, and has appealed.

The record in this case reveals that the sheriff of Pottawatomie county procured a search warrant for the purpose of searching defendant's automobile. That he went to the town of Wanette, in Pottawatomie county, for the purpose of searching the same. That as he entered the town he saw the defendant run and get into his car

and drive into an alley, and from this alley turn into the street. Evidently the defendant saw the sheriff and was making an effort to get away from him, as the testimony of the sheriff and his deputy revealed that defendant was going at the rate of 60 or 65 miles an hour when he was overtaken by the sheriff and his car stopped. That his car was being driven in a careless and reckless manner, and was weaving from one side of the street to the other. The sheriff testified that he arrested defendant for reckless driving, and as he expressed it "speeding."

The testimony of the sheriff was as follows:

"A. He went down the street north. I came into Main street, saw him going down the alley, I believe driving about 60 or 65 miles, reckless driving. Mr. Levergood: We object, that is a conclusion of the witness, we move to strike it. The Court: Objection sustained. The jury are instructed that 'that was reckless driving' was a conclusion. He may state what he saw. A. I saw him driving about 60 or 65 miles an hour, swaying from one side to the other. I went half a block north I saw him turn north, and he goes half a block north and turned east. He ran up by the side of the garage. Q. Which direction was he going? A. North. He ran up by the side of an old building, garage, hay barn, I don't know what it was. I drove up in front of him, driving a Lincoln Zephyr. I jumped out, when I jumped out he throwed the car in reverse and started to back up. I said: 'Earl, stop.' He stopped and said what was the matter. I says, 'You are under arrest for reckless driving.' I said, 'What have you got in that car?' He said, 'Different brands.' Q. Of what? A. He did not say. Q. All right, go ahead? A. I said, 'Earl, I am going to search your car.' He asked me if I would let him drive to the country. I said, 'Yes.' Mark Frazier got out of the car. I placed Mark Frazier in the car with Earl Skinner, and told him to drive out in the country to the first section line east and turn south. He went to the second section line across the Santa Fe tracks going west, turned about a quarter south. I was following the car. I honked for him to stop and they stopped. I opened the turtle back of the car and saw— Q. Whose car was that that you opened the turtle back on?

A. Earl Skinner's. Q. All right. A. So it was loaded with bonded, tax-paid whisky. Earl says to me, 'If you will not arrest me I will give you the whisky and $50.' I said, 'I would do that if it wasn't for Mark Frazier, I am afraid he would tell it.' I searched the car, put the whisky in the Lincoln Zephyr. Q. How much whisky was there? A. Two hundred fifty some odd pints. I arrested Earl, and he asked me if he might come in the next morning and make his bond. I says, 'You may.' He came in the next morning and made his bond, and I brought the whisky to town. Q. Did that happen in Pottawatomie county, state of Oklahoma? A. It did."

A motion was made by defendant to quash the search warrant, and the motion was sustained by the court, and the state relied upon the evidence of the sheriff as being sufficient to convict the defendant without the necessity of a search warrant. We are of the opinion that the state was right in this contention. The testimony of the sheriff reveals that the defendant jumped into his car immediately after seeing the sheriff. He ran into an alley and turned into the street and was driving at the rate of 60 or 65 miles an hour. He made several turns at street intersections, and his car was driven from side to side. Under these circumstances the sheriff had the right to arrest him for careless and reckless driving. It is just such instances as this, and especially where there are street intersections, that the careless and reckless driver does not respect the rights of little children playing on the streets, and often disaster follows.

The statute giving the sheriff the right of arresting defendant is section 10323, Okla. Stats. 1931, 47 Okla. St. Ann. § 92. This is the statute prohibiting reckless and careless driving in Oklahoma. It is a criminal statute and carries with it a punishment for its violation of a fine of not less than $10 nor more than $100, or by imprisonment in the county jail of not less than 10 days nor more than 30 days, or by both such fine and imprisonment. When defendant was stopped by the sheriff he was im-

mediately asked "What he had," and he said, "Different brands," and upon being informed by the sheriff that he intended to search his car, he informed the sheriff that he had friends in the city and did not wish it searched there, and asked permission to drive into the country before the search was made. This was permitted by the sheriff, and was an invitation on the part of the defendant to search his car. A search was made and in the back end of the car was found 251 pints of tax-paid whisky. Under these circumstances, the sheriff had the right to search the car without the necessity of a search warrant.

It is strongly contended that the evidence of the sheriff and his deputy was an afterthought, and after he found out that the search warrant was illegal and could not be used. This was a matter for the consideration of the jury. The sheriff testified positively, as did also his deputy, and we see no reason why this court should disregard the same especially after defendant was found guilty by the jury.

This court has heretofore held that in connection with a lawful arrest, the officer may search the person arrested, and seize any thing found upon him, or in his immediate control; the possession of which is unlawful. It is true that in order to justify the search of the person, and the immediate surroundings of the person arrested, the arrest must be done in good faith, and not as an excuse or subterfuge for the purpose of making an unlawful search.

In the case of Smith v. State, 52 Okla. Cr. 315, 4 P. 2d 1076, the facts were almost identical with the testimony in the case at bar. The court said:

"The facts are undisputed. Before trial a motion to suppress the evidence was filed on the ground that it had been obtained by an unlawful search. A hearing was had, and the motion was overruled. The case depends

entirely on whether or not the evidence was obtained by an unlawful search. Upon this point the record shows that the sheriff and deputies saw defendant on the highway and followed him some 12 miles, in the course of which they went through the town of Snyder. The sheriff testified defendant traveled at a speed of from 58 to 60 miles an hour; that, when he finally overtook and stopped him, he arrested him for speeding and reckless driving; that the search was made as an incident to a lawful arrest. Defendant, testifying on the motion to suppress, said the sheriff when he stopped him on the highway informed him he was arresting him for speeding. Twenty-four half gallons of whisky were found in the turtleback of the car. In the final trial, defendant did not take the stand and offered no testimony.

"It is well settled that an officer making an arrest has authority to search the person and immediate place of arrest of his prisoner and to take from him any dangerous weapons or anything that he may reasonably deem necessary to his own or the public safety or to prevent the escape of his prisoner or which might be used as evidence against him on the trial or which he believes to be connected with the offense charged or that may give a clue to the commission of the crime. 2 R.C.L., p. 467, § 25, notes; 5 C. J., p. 434, § 74 F, notes; Reifsnyder v. Lee, 44 Iowa [101] 104, 24 Am. Rep. 733; Berg v. State, 29 Okla. Cr. 112, 233 P. 497; Washington v. State, 37 Okla. Cr. 415, 259 P. 150; Callahan v. State, 42 Okla. Cr. 425, 276 P. 494.

"The right to take from a person lawfully arrested property found in his possession or the place of his arrest is not unlimited. It has been said that it is doubtful if the right exists except for some of the reasons enumerated. 5 C. J. 435, § 74, note 95.

"In the case of contraband, however, as intoxicating liquor or narcotics, the possession of which itself constitutes a crime, it surely would be the duty of the arresting officer to seize when discovered. Also the quantity of whisky conveyed by defendant in his automobile is a reason for the excessive speed at which he traveled.

"This court will not uphold an unreasonable search where it appears that one is illegally arrested on some

subterfuge for the purpose of justifying or attempting to justify a search otherwise unlawful. If the arrest is unlawful, the search is unlawful. Wallace v. State, 49 Okla. Cr. 281, 294 P. 198. As we read the record, this is not the situation here. A person driving an automobile upon the highway at the speed shown by the evidence is engaged in the commission of a misdemeanor (section 2, Laws 1923, C. 16, as amended by chapter 43, Session Laws 1929, 47 Okla. St. Ann. § 92) and may be lawfully arrested by a peace officer."

See Romines v. State, 45 Okla. Cr. 40, 281 P. 310; Ansley v. State, 44 Okla. Cr. 382, 281 P. 160; McAfee v. State, 65 Okla. Cr. 65, 82 P. 2d 1006; Oklahoma Natural Gas Corp. v. Schwartz, 146 Okla. 250, 293 P. 1087.

It was also contended that because no charges were filed against defendant, charging him with reckless driving, that he should be discharged. We are of the opinion that before the right to search after arrest, that the arrest should be in good faith, and that proper grounds should exist therefor, and it is better practice that the arrest should be followed by proper charges. As heretofore stated, the facts existed for the proper arrest of defendant, and the county attorney evidently was of the opinion that by charging defendant with the unlawful possession of intoxicating liquor, he could be punished sufficiently by this charge, and for this reason did not file a charge of reckless driving which he would have been justified in doing in this case. However, where the arrest is made, and as the result of such arrest defendant's automobile is searched without the necessity of a search warrant, it generally is the best practice to file a charge against a defendant for the crime for which he was arrested. If by the search it is discovered another crime has been committed, the county attorney in his discretion may also file a charge against him for the commission of that crime.

Finding no error in this case we are of the opinion that the judgment of the county court of Pottawatomie county should be affirmed, and it is so ordered.

DOYLE, P. J., and DAVENPORT, J., concur.