## STOUT v. STATE.

No. A-11043.   Jan. 25, 1950.

(214 P. 2d 271.)

Irvine E. Ungerman and Charles A. Whitebook, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.   The defendant, Charles Stout, was charged in the county court of Nowata county with the crime of unlawful possession of intoxicating liquor, but following this the information was amended and the charge was changed to that of transporting intoxicating liquor. Thereafter, the defendant was arraigned on the amended information and subsequently he filed a motion to suppress the evidence, and asked to be heard without a jury, and hearing was had on February 18, 1948.

The defendant testified and he also called as a witness in support of his motion G. A. Martin, justice of the peace.   The state called the two officers making the ar-

rest, and also the sheriff. At the conclusion of the evidence, the court overruled the motion to suppress. The parties then stipulated that the evidence theretofore interposed and introduced in connection with the motion to suppress be considered as the evidence of the case in chief. A jury was by the parties waived and the court rendered judgment finding the defendant guilty as charged and assessed his punishment at 30 days in the county jail and to pay a fine of $250. The defendant has duly perfected his appeal.

The defendant testified that on December 19, 1947, he was in possession of a 1946 Dodge coupe automobile, Oklahoma license No. 2-61022; that he was driving said car on U. S. Highway No. 60 toward Nowata, coming from Vinita; that seven or eight miles out from Nowata a car came from behind and commenced flashing a spotlight on his car; that he concluded he should pull over to the shoulder of the highway and stop, and he did; that a man got out of the car to his rear and came to the side of defendant's car and said he was a deputy sheriff and asked defendant what he had in his car; that he told the deputy he had some records, material, and music boxes, and the officers told him he was supposed to have a commercial tag; that the deputy and his partner asked him to get out of his car and he did; that they went to the back of his car and he gave the officers some keys to the trunk, but they could not get the trunk open, and one deputy said: "We can't get the trunk open. There is nothing we can do." That he then asked the officers about a place in Nowata where he might eat, and they directed him to the Ideal Cafe; that he got in his car and proceeded to Nowata; that he noticed the officers following him and on reaching town he parked one block from the cafe, but walked back to the cafe and it was

about to be closed, so that defendant drank a cup of coffee and returned to his car, and he found the Indian deputy, Sequichie, there, and he told defendant the sheriff wanted to see him, and the deputy got in defendant's car and directed him to drive to the courthouse. Defendant further testified that the sheriff questioned him and that the sheriff got on the radio and verified the information and defendant's identity with Tulsa. That the sheriff then began to prepare a search warrant. He stated that the sheriff asked his deputies: "The sheriff asked, he says, 'What did you stop this boy for' and, they said, 'Well he was speeding' ".

On cross-examination defendant claimed that the first thing the officers asked him when they first stopped him was: "Have you got whisky in this car?" He stated that on entering the Nowata city limits he saw a sign giving the speed limit in one zone as 20 miles an hour, and in another as 15 miles an hour. He denied driving as fast as the officers claimed, but was not asked and did not answer as to whether he exceeded the speed limits prescribed.

G. A. Martin, witness called by defendant, testified that he was the justice of the peace who issued the search warrant for search of defendant's car on the night of December 19, 1947, and he identified the affidavit for search warrant, the search warrant, and return on the warrant.

Arch Sequichie testified on behalf of the state, stating that he was a deputy sheriff of Nowata county on December 19, 1947, and was on U. S. Highway No. 60 seven miles east of Nowata. He said:

"To begin with, we had stopped another car and told them to watch their speed and this car shot by, and the other deputy spoke to me about it and we drove on and

cut him and stopped him and told him to watch his speed or he would kill somebody."

Sequichie claimed he and Deputy Johnson had to drive 80 miles an hour, or better, to stop defendant. He testified:

"Q. Now, when you stopped him, what did you say to him? A. I told him to watch his speed. Q. Did you ask him about anything he had in the car? A. I asked him what he was hauling, and he said he had nickelodeons, and he said, 'I got a bunch of records,' and showed me a string of keys, he had the nickelodeons in the back. Q. What did you say to him then? A. Well, I don't remember the exact conversation that come up but I told him to go ahead. He showed me some keys to the back and said he hadn't been in there for two or three months. I told him to go ahead. Q. Did you try any of his keys to open the back end? A. He handed me the keys and said to open it and I just handed them back to him."

Witness testified that defendant got in his car and was over the hill before he could get started and he had to drive 70 miles an hour to keep him in sight; that defendant after entering the city limits of Nowata drove about 50 to 60 miles an hour through a 20 mile per hour speed zone and about 40 miles an hour through a 15 mile per hour zone. He claimed that he thereafter in Nowata arrested defendant and that he arrested him for "speeding."

On cross-examination by Mr. Ungerman witness denied that he was searching other cars on the highway the night defendant was arrested, declared that he was slowing down speeders, stated that he gave the facts to the county attorney the night of the arrest and also the next day, and that the county attorney prepared the charges against defendant. Witness reiterated that when he first stopped defendant he told him to watch his speed, and did

not arrest defendant at that time, but told him to drive on, and directed him, after inquiry by defendant, to the Ideal Cafe in Nowata as a place where he might get something to eat. He further stated that he followed defendant on in to Nowata and he estimated that defendant was driving between 80 and 90 miles per hour; that they were suspicious of defendant and wanted to observe him; that defendant drove through a 20 mile speed zone in Nowata at about 50 or 60 miles an hour, and through a 15 mile zone at around 40 miles an hour, and that on reaching Nowata drove a block past the Ideal Cafe and parked his car in front of a funeral home and left on foot; that witness waited for defendant to return to arrest him for speeding and reckless driving; that witness communicated with Sheriff Arthur Turner by radio and the sheriff directed him to bring the defendant to the courthouse for questioning; and that he was taking down the number on defendant's car license when defendant returned. That defendant accompanied witness in defendant's car to the sheriff's office.

Arthur Johnson, deputy sheriff, testified for the state, corroborating the material points of Deputy Sequichie's testimony. He stated that he and Sequichie followed the defendant on into Nowata due to the fact that defendant did not have a proper tag for hauling nickelodeons, and so forth, and did not know whether he was really going to Nowata.

Mr. Ungerman, counsel for defendant, was permitted to recross-examine state's witness Sequichie concerning the facts of searching cars on U. S. Highway 60 on October 17, November 25, December 1 and 5, 1947. Defendant sought by the questioning to show that Deputy Sequichie made it a practice and custom of stopping cars on said highway east of Nowata and searching them with-

out a search warrant. The court sustained objections to such questions. No witnesses were actually offered to swear to the matters implied by this line of questioning on cross-examination. There was no substantive evidence offered in this connection.

The sheriff, Arthur Turner, testified that on the night of December 19, 1947, Deputies Johnson and Sequichie brought defendant to his office for questioning; that he directed Sequichie to go get a search warrant to search defendant's car; that after Deputy Sequichie left, the defendant tossed him a bunch of keys and told him to search the car and that he would find 18½ cases of whisky in the car, and stated that it was not necessary to get a search warrant.

The court, at the conclusion of the evidence, stated: "The case hinges on whether or not there was a legal arrest" and on consideration, found the defendant guilty of unlawful transportation of intoxicating liquors as charged, and as has been recited.

For reversal defendant sets out ten assignments of error. We shall not detail the assignments, but will consider the propositions in order presented.

Counsel for defendant has filed an exhaustive, interesting and provocative brief. But as the trial court stated, this case "hinges on whether or not there was a legal arrest."

There is evidence showing that Deputies Sequichie and Johnson were, on the night of December 19, 1947, patrolling the highway east of Nowata in Nowata county, and had been slowing down and cautioning speeders, and did stop the defendant and warn him to watch his speed, and question him about his load and advise him

that he needed a commercial tag to haul nickelodeons and other merchandise. Defendant informed them he had, yet they did not arrest him for not having such license. They let him go and directed him to a cafe in Nowata in reply to inquiry of defendant as to where he might get something to eat. But defendant's version is that the officers asked him if he had a load of whisky and one of the officers tried to open the trunk of his car by trying the handle and by using some keys defendant voluntarily gave him (apparently knowing that they would be unable to open the trunk), but gave up and let him go only after they were unable to get the trunk open. Nevertheless, from defendant's own testimony no search was actually made.

According to the testimony of the officers he proceeded on towards Nowata at such a terrific rate of speed that they had to drive 70 miles per hour to even keep him in sight. The fact that the officers followed the defendant after the incident on the road was natural, and is not of itself to be condemned. If the defendant did eat at the cafe in Nowata they would have an opportunity to check up on him by radio and might obtain sufficient facts in connection with their own observations to form the basis for a search warrant. He had stated he was servicing nickelodeons, but had also stated it had been about three months since he had opened the back where he kept his records and other equipment,—an unusual fact, if true, in view of his alleged business.

Up to this point nothing had happened that would have justified the arrest and search of defendant, except that he did not have a commercial license; that is, a class C tag, on his car, which was necessary under the statement by defendant to the officers. Tit. 47 O. S. 1941 §§ 22.4; 22.5(7); 161(b) (3) and 172. The fact that the

officers did not there and then arrest the defendant on such charge bears out their contention that they were slowing down speeders and reckless drivers.

And whereas defendant denied that he drove recklessly on his way into Nowata, he admitted that he did see a sign fixing 20 miles an hour for one zone in Nowata and 15 miles for another, and whereas he denied driving 50 to 60 miles an hour through the 20 mile zone, and 40 miles an hour through the 15 mile zone, all as testified to by Deputy Sequichie, he never did testify that he drove within the speed limits prescribed, so that the testimony of the officers stands unrefuted.

Concerning their next contact with the defendant after he reached Nowata, Deputy Sequichie testified:

"We pulled in there to get a parking place and I was out taking the numbers of the car when he come back and said the place was closed up. Q. Where did you go with him after you told him he had broken the speed limit, the 15 mile speed limit? A. He said at that rate you had to creep through town, and I told him that was the speed limit. Q. Did you arrest him for violating the speed limit? A. Yes, sir."

The defendant himself, as heretofore recited, testifying concerning this last contact with the officers after they took him to the sheriff's office, said: "The sheriff asked, he says, 'What did you stop this boy for', and they said, 'Well, he was speeding.' "

This confirms the testimony of the officers, and supports the judgment of the trial court, that the officers did in fact arrest the defendant for speeding or reckless driving, a misdemeanor having been committed in their presence, Tit. 47 O. S. A. 1941 § 92, and did take him to the sheriff's office for questioning concerning this charge and

the fact that he was hauling commercial equipment without a proper tag. The evidence shows that this information was given the county attorney that night and also the next day.

While the fact that neither the charge for which defendant was taken into custody, or even the charge for not having a proper tag, was filed against the defendant, supports the argument of counsel for the defendant that the officers were from the beginning actually seeking whisky, nevertheless, the important facts just recited showing that the officers had grounds for arresting the defendant when he returned to his car in Nowata and was taken into custody, and the arresting officer minutes afterwards stating to the sheriff that the defendant had been taken into custody for speeding, which we conclude to mean reckless driving, and soon after the same night disclosing the facts in the case to the county attorney, whose duty it was to decide on the charge or charges to be filed, demonstrates in this case good faith on the part of the officers. Certainly the defendant should be the last person to complain because the county attorney may have overlooked filing every charge he might have. See Wilson v. State, 89 Okla. Cr. 421, 209 P. 2d 512.

No doubt if the county attorney had filed a charge of reckless driving in the state court, or of speeding in the city court of Nowata, or a charge in the state court based on defendant's failure to have a truck tag, in addition to the charge of unlawful transportation of intoxicating liquor, the defendant would have complained bitterly that he was being persecuted, or "punched." In this case the record indicates that the county attorney decided what charges to file. We conclude that there was a lawful arrest. Having determined that a lawful arrest was made, it follows under a long line of cases decided by this court

that it was thereafter lawful that the defendant's car be searched. In Skinner v. State, 65 Okla. Cr. 371, 87 P. 2d 341, this court said:

"An officer may search the person arrested, and seize anything found upon him, or in his immediate control; the possession of which is unlawful. In order to justify the search of the person, and the immediate surroundings of the person arrested, the arrest must be in good faith, and not as an excuse or subterfuge for the purpose of making an unlawful search.

"Where a defendant is lawfully arrested, and as a result thereof his person, or immediate surroundings are searched, it is the best practice for the officer to file a charge against the defendant for the crime for which he was arrested. If it is found as a result of the search that other crimes have been committed, the county attorney may, in his discretion, file charges for the commission of that crime."

See, also, Smith v. State, 52 Okla. Cr. 315, 4 P. 2d 1076, and cases cited.

The defendant argues that the officer Sequichie had on October 17, November 25, and December 1 and 5, 1947, stopped and searched other cars on U. S. Highway 60 without search warrants and had found whisky. Counsel for defendant attempted to bring out such by cross-examination of Deputy Sequichie, but the court sustained objections of the county attorney to such questions, and we think properly so. The presumption is that the searches were legal. 22 C.J.S., Criminal Law, 589; Lewis v. State, 49 Okla. Cr. 160, 292 P. 888. There was no indication that a court had determined that the alleged searches in question were illegal, and in the absence of such showing we do not find that the trial court abused its discretion in excluding objections to such questions. Whether or not such searches, if made, were reasonable were in

each instance judicial questions to be determined in view of all the circumstances under which made. Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433. If in the alleged cases the witness Sequichie had been determined by court decrees to have made illegal searches, then in each such case the fact could have been brought out for the purpose of affecting the credibility of the evidence of the witness in the instant case. Tit. 12 O. S. A. § 381.

The other specifications of error, and particularly the questions as to whether or not the search warrant involved herein was legal or void, or whether or not the defendant had waived the necessity for obtaining a search warrant by voluntarily informing the sheriff that he had 18½ cases of liquor in his car and giving him the keys and advising him that a search warrant was unnecessary, are immaterial and not necessary of determination by reason of our conclusion that there was a legal arrest.

For the reasons recited, the judgment of the county court of Nowata county is affirmed.

JONES, P. J., and BRETT, J., concur.