Carl KING, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12822.

Court of Criminal Appeals of Oklahoma.

Nov. 16, 1960.

Robert B. Manke, Prague, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Carl King, plaintiff in error, who will hereinafter be referred to as defendant, was charged in the district court of Lincoln County with the offense of driving a motor vehicle while under the influence of intoxicating liquor, second offense, was tried before a jury, convicted, and his punishment left to the court, who fixed the penalty at thirty months imprisonment in the State Penitentiary, and a fine of $250.

The basis for the appeal is the contention of defendant that the trial court committed reversible error in overruling defendant's motion to suppress the evidence, and in admitting the testimony of the arresting officer, Charles Tackett, "because the arrest of the defendant was illegally and unlawfully made without a warrant for a misdemeanor not committed in the presence of the arresting officer."

Prior to the empanelling of the jury, and the commencement of the trial, the defendant was permitted to withdraw his plea of not guilty, for the purpose of filing a motion to suppress, whereupon the jury was excused. The defendant used one witness, Charles H. Tackett, the arresting officer, to support his motion.

Charles H. Tackett testified that at the time he was testifying he was a deputy sheriff, but at the time of the arrest complained of he was a city policeman of Chandler.

In response to questioning by defense counsel, witness said that prior to the arrest complained of he had arrested defendant for public drunk twice, once for driving without a driver's license, and once for drunken driving. Of course only convictions could be inquired about, but presumably for the purpose of the motion convictions had been had or defense counsel would not have made inquiry.

Witness further stated that at the time involved in the action then before the Court, that he arrested defendant for drunken driving and for not having a driver's license. He said that he made out a summons for both reasons. He took the defendant to the city jail where he stayed for the remain-

der of the night but the next day defendant was removed to the county jail where the only charge filed by the county attorney was the instant charge of driving a motor vehicle while under the influence of intoxicating liquor, second offense.

Later defense counsel asked:

"Q. Now, you testified here, Mr. Tackett, that you arrested him for two reasons—no driver's license, and driving while intoxicated. Is that right? A. I didn't say I arrested him for that at that time, but I charged him with that because he didn't have a driver's license and he was doing the driving.

"Q. Well, what did you arrest him for? A. Because of the way he was driving.

"Q. Well, now, you say he was jumping along in his car—was that all he was doing? A. *He was on the wrong side of the street coming down and when I pulled out and throwed the light on him, why he was more or less in the middle of the street.*" [Emphasis supplied.]

From a reading of the entire testimony of witness on motion to suppress, it appears that during the day the officer had information that two young boys were driving around with defendant in his car, one of the boys doing the driving. Later in the evening the car, known by the officer from a check of records to be defendant's car, was parked in front of a known bootlegger's place across Manvel Street on the east side headed south down a steep portion of the street. Later the officer talked with Paul Pruitt some thirty minutes before the arrest, which took place at around midnight, and told him that he knew he did not have a driver's license and had been informed that he had been driving Carl King's car. The officer told Pruitt that if he continued to drive the car, he would have to arrest him for driving without a license.

Witness admitted that he had seen defendant King earlier in the afternoon. Said he: "They helped him in the back door of Stumpy Estes' house, he was so intoxicated they had to help him up the back steps, but I was so far away that I couldn't get to him before they got him inside and shut the door."

The officer said that he discovered the car parked on the wrong side of Manvel Street and drove on up to a filling station at Fourteenth and Manvel, a block away. He said he had just driven in when he noticed the King car move south down Manvel, but, "I couldn't tell who was driving the car, but the driver was having a time keeping it going." That "he would go a ways and his motor would die, and he would go a ways and his motor would die—he was having a hard time keeping it going.".

The officer was asked:

"Q. And is that the reason that you arrested him, because he couldn't keep his car running? A. Well, not necessarily. I pulled over to see what the deal was. I stop a lot of people that I don't arrest and find out what their trouble is."

Witness further gave it as his opinion on questioning that defendant was very drunk. He said: "Well, he was very thick tongued, he couldn't hardly talk and when we got to the city jail he was so staggery I got his arm to help him."

After oral argument the court overruled the motion to suppress, a plea of not guilty was re-entered for defendant, and after a recess a jury was empanelled to try the case.

■ On trial the State called officer Charles H. Tackett and four other witnesses on direct examination and one witness on rebuttal to show the past record of convictions of defendant for drunkenness and driving a motor vehicle while intoxicated, going into more details as to the facts of the arrest, showing that defendant had visited a Negro bootlegging place several times prior to arrest, which took place near midnight. The defendant also testified and produced two witnesses who did not think defendant was drunk the night of his arrest. Defendant admitted having taken three drinks of whiskey about two hours apart

the evening and night of his arrest, but said that he had drunk as much as a pint of whiskey without becoming intoxicated. He said that Paul Pruitt who had been driving his car had the emergency brake on and that when he got ready to leave the bootlegger's place that he wanted to get his car home and got in to drive but that he never used his emergency brake, and though his car was headed down hill, that the engine would propel the car a few feet, and then the engine would die, and when the officer stopped·him he had gotten on the right hand side of the street, going south. So there was presented to the jury a conflict as to the facts in the case. So far as the trial proper is concerned, the jury's determination would be final as to the facts. Chapman v. State, 84 Okl.Cr. 41, 178 P.2d 638; Hill v. State, Okl.Cr., 294 P.2d 866; Harvelle v. State, 288 P.2d 205.

The decisive issue here involves the motion to suppress.

 In the first instance, officer Tackett knew from his records that defendant did not have a driver's license; he knew that title to the car that he had under observation·in front of the bootlegger's on South Manvel Street was in the name of Carl King, the defendant. If he should recognize Carl King and see him drive the car, then a crime would be committed in his presence and he would be authorized to stop the car and place the defendant under arrest, and if, in such process, he should discover that King was actually intoxicated, he could also file a charge against him of operating a motor vehicle while under the influence of intoxicating liquor. Stevens v. State, Okl.Cr., 274 P.2d 402. He would not be justified, where he did not recognize the driver of the King car, of summarily stopping it to see who was driving it, and what might be turned up. He could not stop the car if the only reason he had was a suspicion that the defendant King was driving it. McCormick v. State, Okl.Cr., 277 P.2d 219.

 Admittedly, officer Tackett had the car under surveillance after discovering it parked on the east side of South Manvel Street, headed south,· and as he sat in his car at the service station a block away. He had good reason, because he had at least satisfied himself that the owner was intoxicated and was without a driver's license. But not recognizing the driver from the distance where he was located, or any other time until he actually got the car stopped, the determining point is whether the officer was justified in stopping the car. The only thing justifying the officer in intervening was to either arrest the driver for wrongful parking of the car under a city ordinance, or to warn the driver for his manner of driving, or to help him, or to arrest him for reckless driving, as the facts would justify. Here, admittedly, the car was bucking and stalling and proceeding from the wrong side of the street. We must conclude that the· officer had a right to investigate with view of requiring the driver to have his car tuned up before proceeding and he caused him to drive into a service station at the foot of the hill. There he recognized the defendant. He had a right to arrest him for driving without a driver's license. He already knew that defendant's license had been revoked. In transferring defendant to his car, and to jail, the officer satisfied himself that defendant was actually under the influence of intoxicating liquor. And although the officer could have filed several charges under city ordinances, it was decided the next morning to take defendant to the county jail and the county attorney determined what charges to file under state law, and the city officers decided not to file any charges in the city court. In this connection see Wilson v. State, 89 Okl.Cr. 421, 425, 209 P.2d 512, 212 P.2d 144; Stout v. State, 90 Okl.Cr. 360, 214 P.2d 271.

In the absence of any evidence other than that of the arresting officer on motion to suppress being as above summarized, we feel that the facts support the trial court in his ruling on the motion. See in this connection Griffin v. State, 90 Okl.Cr. 90, 210 P.2d 671; Mitchell v. State, 73 Okl.Cr. 184, 119 P.2d 99.

The judgment appealed from is affirmed.