## BRINEGAR v. STATE.

No. A-11788. Sept. 30, 1953.

Supplemental Opinion on Rehearing
Oct. 20, 1953.

(262 P. 2d 464.)

300

Irvine E. Ungerman and Charles A. Whitebook, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Edward H Brady, County Atty., Vinita, for defendant in error.

POWELL, P. J. Herein an appeal has been perfected from the county court of Craig county, by Virgil Thomas Brinegar, by reason of appellant having been found guilty of the crime of transportation of intoxicating liquor, a misdemeanor, and for which he was assessed punishment of 30 days confinement in the county jail, and the payment of a fine of $250.

Prior to trial defendant had filed a motion to suppress the evidence obtained by virtue of the search of the turtle-back of his automobile, alleging that the liquor found and forming the basis for the charge was obtained by an illegal search and seizure and in violation of his constitutional rights. The provisions of the Constitution of Oklahoma involved, Art. II, §§ 30 and 21, reading:

"§ 30. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

"§ 21. No person shall be compelled to give evidence which will tend to incriminate himself, except as in this Constitution specifically provided * *."

The above provisions are practically identical with the Fourth and Fifth Amendments to the Constitution of the United States. In Gore v. State, 1923, 24 Okla. Cr. 394, 218 P. 545, and thereafter in Keith v. State, 30 Okla. Cr. 168, 235 P. 631, and many subsequent cases, though this court held that a rule of evidence established by the Supreme Court of the United States relating to evidence illegally obtained by officers or agents of the court, by means of an illegal search, or against compelling an accused to be a witness against himself, was not binding on the state courts in cases relating to like seizures in violation of like provisions in the State Constitution; we further held that, in the interest of uniformity of decision it would be highly persuasive.[1]

Since the Gore case this court has given close study to the interpretation given from time to time by the Supreme Court of the United States to the Fourth and Fifth Amendments to the Federal Constitution, particularly as compelled by situations brought to focus in the trial of persons charged with violation of the liquor laws, and has generally followed such interpretations.

It is true that there is a notable exception, and being in the matter of our refusal to follow the Federal rule developed and applied in such cases as Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790; United States v. Lee, 274 U.S. 559, 47 S. Ct. 746, 71 L. Ed. 1202; Husty v. United States, 282 U.S. 694, 51 S. Ct. 240, 75 L. Ed. 629, 632, and Brinegar v. United States, 10 Cir., 1947, 165 F. 2d 512, affirmed 388 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879, rehearing denied 338 U.S. 839, 70 S. Ct. 31, 94 L. Ed. 513; (and see 51 A.L.R. annotations at pages 424, 442; 82 A.L.R. 782, 789, and the dissenting opinions in the Carroll, Husty and Brinegar cases) which rule permits and upholds arrests without warrant for misdemeanors, on probable cause. As stated in the Husty case, supra [282 U.S. 694, 51 S. Ct. 241]:

---

[1] See Maxwell v. Dow, 176 U.S. 581, 20 S. Ct. 448, 451, 44 L. Ed. 597, 599, where the Supreme Court of the United States, through Justice Peckham, said:

"In order to limit the powers which it was feared might be claimed or exercised by the Federal government, under the provisions of the Constitution as it was when adopted, the first ten amendments to that instrument were proposed to the legislatures of the several states by the first Congress on the 25th of September, 1789. They were intended as restraints and limitations upon the powers of the general government, and were not intended to and did not have any effect upon the powers of the respective states."

But see McNabb v. U. S., 318 U. S. 322, 63 S. Ct. 608, 87 L. Ed. 819, and Upshaw v. U. S., 335 U. S. 410, 69 S. Ct. 170, 93 L. Ed. 100, and Hendrickson v. State, 93 Okla. Cr. 379, 229 P. 2d 196. P. 2d 196.

"To show probable cause it is not necessary that the arresting officer should have had before him legal evidence of the suspected illegal act. * * * It is enough if the apparent facts which have come to his attention are sufficient in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched."[2]

An examination of the federal cases generally will disclose, however, that trial courts will examine with care the apparent facts that came to the attention of the officers and that formed the basis for the search, and if the court determines that such information and surrounding circumstances were not sufficient to justify the search, will sustain a motion to suppress.

We first gave consideration to this proposition in Wallace v. State, 1930, 49 Okla. Cr. 281, 294 P. 198 (dissenting opinion by Chappell, J.) and determined that in case of misdemeanors, in order to justify an arrest in the absence of a warrant, that the act charged must have been committed in the presence of the arresting officer, and that where the officer does not know of the act constituting the offense, it is not committed in his presence. And in the later case of Edwards v. State, 83 Okla. Cr. 340, 177 P. 2d 143, 144, we said:

"The right to search and seize is in derogation of the right to be free from search and seizure, in one's person, home, and property, which includes one's automobile. Held, must be strictly construed to afford intended protection against abuse."

So it is that the "probable cause" rule whereby officers acting upon belief reasonably arising out of the circumstances known to the searching officers may search an automobile without a warrant, though followed in federal courts, and some state courts, is not applicable to prosecutions in the state courts of Oklahoma. State v. Simpson, 1950, 91 Okla. Cr. 418, 219 P. 2d 639.

The distinction developed in such cases as Carroll, Husty, Lee and Brinegar, supra, between the search of a fixed place of business or residence and moving vehicles[3] or boats, is important, and makes imperative the keeping in mind of this

---

2 The effect of the above exception to the Constitutional provisions in question is to break down the difference between the right to arrest for a felony and the right to arrest for misdemeanors, where moving vehicles are involved. This is the Federal rule. And is the rule sanctioned by some states. The rule is said to have been born of necessity. But it should be noted that this rule applies only to moving vehicles or conveyances and boats. In Agnello v. United States, 1925, 269 U. S. 20, 46 S. Ct. 4, 6, 70 L. Ed. 145, 149, 51 A.L.R. 409, Justice Butler said:

"Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See Entick v. Carrington, 19 How. State Trials, 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause." (Citing cases.)

3 This court has many times cited the leading case from a state court on the question of the right without a search warrant to search a motor vehicle for intoxicating liquor, and being People v. Case, 1922, 220 Mich. 379, 190 N. W. 289, 27 A.L.R. 686; see Ratzell v. State, 27 Okla. Cr. 340, 228 P. 166; Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549; Arnold v. State, 70 Okla. Cr. 203, 105 P. 2d 556; Nott v. State, 70 Okla. Cr. 432, 107 P. 2d 366, and Edwards v. State, 81 Okla. Cr. 296, 164 P. 2d 245.

It is most important to note that the unlawful possession of intoxicating liquor in Michigan, at least at the time of the opinion, constituted a felony. But even so, from the facts stated, the search of the vehicle there was made solely on suspicion. It was not incidental to a legal arrest. The dissenting opinion of Justice Wiest, concurred in by Justices Clark, McDonald and Sharpe, is a masterpiece in giving the historical background of the Fourth and Fifth Amendments to the Constitution of the United States. This dissent as a matter of historical information should be carefully read by all students of the Bill of Rights.

Our approval of People v. Case, is, however, in the cases we have cited above, limited to the approval of the proposition, stated in People v. Case, supra [220 Mich. 379, 190 N.W. 292] that

"Whether search of and seizure from an automobile upon a highway or other public place without a search warrant is unreasonable is in its final analysis to be determined as a judicial question in view of all the circumstances under which it is made."

Also the following language from the body of the opinion:

"Our Constitution contains both a provision against intoxicating liquor and against unreasonable search and seizure. Every constitutional provision, as well as statutory, should be construed

distinction as we consider the law of search and seizure as applicable to the two points urged by the defendant as grounds for reversal of the within case, and being, as we understand from the briefs:

(1) That defendant having been arrested for a traffic violation in the night-time and incarcerated in jail and his car having been taken into possession by the officers and placed in storage, and the turtle-back not having been searched until some time the following forenoon, when the lock to the rear end was forced, that such delayed search distant in time and place from the arrest, was not incident to the arrest and that a search warrant was necessary.

(2) That the arrest of the defendant for passing a car in a no-passing zone, did not ipso facto authorize the officers to search more than the defendant and his immediate surroundings, and only for firearms, in that there was no occasion to search for evidence of the crime for which arrested, as obviously no further evidence was required than proof of the fact of driving across the center line of the highway in a no-passing zone.

In the present case, on hearing of the motion to suppress the defendant testified that around one o'clock in the morning on January 19, 1952, he was driving his 1950 Hudson Club Coupe along U. S. Highway 66 west toward Vinita at a speed of forty to forty-five miles per hour; that a red light was thrown on him and two highway patrolmen came up and told him that he had passed a truck in a no-passing zone; that witness denied this and then they told him that he crowded a truck off the road, and said: "Get out of the car and open up that turtle trunk." Witness stated that he got out but could not get the trunk open as he could not find the right key, but tried for about thirty minutes to get the trunk open, and the officers then said: "Arrest you for passing in a no-passing zone"; that "They asked me if I knew where the court house was and said, "Drive your car up there and we will have the judge come down and open up that turtle." He stated that he drove by himself as directed and to the rear of the court house in Vinita; and the officers followed, and on arrival told him, "Call a taxi and go home and see if you can find the key and return in ten or fifteen minutes." He told the officers that he had been working on a building and had probably lost his key and could not find it until daylight.

Following this, witness stated that the officers told him that they would 'phone the sergeant and he went back and sat in the taxi; that the officers then 'phoned the county attorney who said: "Throw him in jail", and the officers com-

where possible to give effect to every other constitutional provision in the instrument. Neither our state or the federal Constitution directly prohibits search and seizure without a warrant, as is sometimes asserted. Only 'unreasonable' search and seizure is forbidden. They are substantially the same upon that subject. * * *

"The generally recognized rule is fairly stated in the following annotation to 11 Fed. Stat. Ann. 354: 'The question whether a seizure or a search is unreasonable in the language of the Constitution is a judicial and not a legislative question: but in determining whether a seizure is or is not unreasonable, all of the circumstances under which it is made must be looked to.'

"The automobile is a swift and powerful vehicle of recent development, which has multiplied by quantity production and taken possession of our highways in battalions, until the slower, animal-drawn vehicles, with their easily noted individuality, are rare. Constructed as covered vehicles to standard form in immense quantities, and with a capacity for speed rivaling express trains, they furnish for successful commission of crime a disguising means of silent approach and swift escape unknown in the history of the world before their advent. The question of their police control and reasonable search on highways or other public places is a serious question far deeper and broader than their use in so-called 'bootlegging' or 'rum-running,' which in itself is no small matter. While a possession in the sense of private ownership, they are but a vehicle constructed for travel and transportation on highways. Their active use is not in homes nor on private premises, the privacy of which the law especially guards from search and seizure without process. The baffling extent to which they are successfully utilized to facilitate commission of crime of all degrees, from those against morality, chastity, and decency to robbery, rape, burglary, and murder, is a matter of common knowledge. Upon that problem a condition and not a theory confronts proper administration of our criminal laws. Whether search of and seizure from an automobile upon a highway or other public place without a search warrant is unreasonable is in its final analysis to be determined as a judicial question in view of all the circumstances under which it is made."

plied. Witness stated that he was never served with a search warrant, or a warrant of any kind before or after his arrest. The officers opened the turtle back of his car between eight in the morning and twelve o'clock noon. He was not present, but in jail for the traffic violation. This fact is complained of and said to conclusively demonstrate that the arrest was a subterfuge to justify the search. There was no claim by the defendant that the liquor had been "planted" in the car by the officers, or others. If the arrest was a subterfuge, then, of course, the search would not be lawful. But, on the other hand, if the right existed in the first instance to make the search of the turtle back, is it not reasonable to conclude that the vehicle might for convenience be moved or caused to be moved by the officers for the purpose of search? See Callahan v. State, 42 Okla. Cr. 425, 276 P. 494. The case of Davis v. State, 30 Okla. Cr. 61, 234 P. 787, is analogous. See, also, Coffelt v. State, 36 Okla. Cr. 365, 254 P. 760. Particularly would this be so where the inability of the officers to get in the back of the vehicle was caused by the accused not producing the key that would have enabled them to have opened the same without destruction of the lock and perhaps causing serious damage to the turtle back portion of the car. If the officers had a right to search, they had a right to force the lock.

It is true that during the lapse of time after the car was put in storage at Vinita the officers had ample time to secure a search warrant for further search of the car, but the car was already in the exclusive custody and control of the officers, and their right to search, if it ever existed, could not be impaired by the apparent gymnastics of the accused in finding excuses to delay the opening of the turtle-back.

The cases of Walker v. State, 89 Okla. Cr. 66, 205 P. 2d 335, and Simmons v. State, 94 Okla. Cr. 18, 229 P. 2d 615, urged by defendant, are not applicable to the situation here presented which concerns a moving vehicle as distinguished from fixed buildings, and therefore involves essentially different principles and must be decided upon different grounds. See Carroll v. United States, supra. For such reason, even if Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 1234, 92 L.Ed. 1663, had been followed by this court and the rules enunciated therein were still the law, it would not govern herein.

In the Trupiano case the court held that "* * * The mere fact that there is a valid arrest does not ipso facto legalize a search or seizure without a warrant", and held that, although the arrest in the case was legal (the Federal agents under the probable cause rule having more than adequate cause to suspect that petitioners were engaged in felonious activities), in spite of this the seizure of the contraband property was not made in conformity with the requirements of the Fourth Amendment since in view of the cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants whenever reasonably practicable, and of the fact that there having been ample opportunity to obtain a search warrant and a lack of any apparent need for summary seizure, the search could not be justified as an incident to a legal arrest.

Two years later, in United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L. Ed. 653, the Trupiano case was overruled in so far as it required the procuring of a search warrant as a prerequisite to a search where, though probable cause existed, there was time and opportunity to procure a search warrant.

In the within case, on cross-examination defendant admitted that the officers after stopping him directed a light on his coupe and opened the glove compartment and found a half-pint bottle that had been opened and that it "had some taken out." By stipulation it appears that the liquor set forth in the information and for which the defendant was charged was found on the subsequent search of the turtle-back,

and did not involve the fraction of a half pint found in the glove compartment of the automobile. Nevertheless, this feature of the case, though given scant consideration in the briefs, cannot be overlooked, and must be considered after completion of the solution of the issues urged and argued.

James Carl, testifying on behalf of the state in opposition to the motion, stated that he was formerly a highway patrolman, lived in Picher, Oklahoma, and on the 19 day of January, 1952, at the time in question he was an officer, that he and trooper Ballard were in their patrol car four or five miles east of Vinita on U. S. Highway 66 and they observed defendant pass a truck going up a hill in a no-passing zone; that another truck coming over the crest was forced off the road, so that they stopped defendant and placed him under arrest for traffic violation. Witness stated that they searched the car and found about a half pint of whiskey in the glove compartment of the car, but that Brinegar could not find his key to unlock the back, so they did not get to search it until the next morning. Witness corrected this to say that Brinegar was arrested about 1 or 2 o'clock in the morning, and the search was made some time later in the morning. The officer's testimony concerning the details of the search was much as that recounted by the defendant.

On cross-examination the former patrolman admitted that he and his partner were parked at the side of a cafe along the highway but denied seeing defendant pass through Afton, but saw him for the first time out on Highway 66; he testified that he and Officer Ballard were about a quarter of a mile behind the defendant when they saw him start around the truck in a no-passing zone, that they decided to make an arrest and did so without delay; that they caused Brinegar to get out of his car, examined his driver's license, and immediately began to search his car, but could not get in the back; that after placing Brinegar in jail at Vinita they impounded the car at the Vinita Motor Company and later on witness, the county attorney and officers Lewis and Leech got the back open and found the liquor that accused was being tried for transporting. No contraband of any kind was shown to have been in plain view in the seats or on the floor of the car. The officer did not know that the liquor was in the turtle back until after search. The court overruled the motion to suppress, and the defendant excepted.

After the hearing on the motion to suppress, the parties stipulated that a jury might be waived and that the evidence heard in support of the motion might be considered as the evidence on trial. *They then further stipulated that the liquor listed in the information was found in the turtle-back of the car.* Counsel for defendant then announced that upon the State of Oklahoma resting its case, defendant desired to enter a demurrer, and it was dictated and to the effect: that the evidence was obtained in violation of the constitutional rights of the defendant and as the results of an illegal search and seizure.

Thereupon the court overruled the demurrer of defendant, to which an exception was saved. Judgment was entered finding the defendatnt guilty as charged. An order had previously been issued on February 20, 1952, for the destruction of the liquor involved. Tit. 37 O.S.1951 § 104. Davis v. State, supra, Ratzell v. State, 27 Okla. Cr. 340, 228 P. 166.

The officers, as it fairly appears, abandoned pressing a charge for the traffic violation defendant was advised that he was being arrested for, based on an offense said to have been committed in their presence, and substituted therefor a prosecution based on a different offense and on evidence of which the officers had no knowledge, except for the search without a warrant.

The question now presented is whether or not there was a legal arrest. By reason of the facts recited, the answer as to the lawfulness of the arrest depends on the authority of the officers in this case to arrest without a warrant.

By Tit. 22 O.S.1951 § 196, it is provided: "A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3 When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

It is well here to note, from the evidence already summarized, the fact that although counsel for the defendant in support of his motion to suppress, by cross-examination, attempted to develop that the arresting officers while parked by a cafe in Afton saw the defendant drive by, and recognizing him as a bootlegger followed him with the avowed intention of making an arrest without a warrant, the officer denied noticing defendant's car until they saw the vehicle pass a truck in a no-passing zone. From the evidence of the officers it would appear that they did not recognize Brinegar, if ever, until after the arrest. Counsel point out, however, that the officers disclosed their real motive for stopping the defendant and at the time they stopped him, by immediately demanding of him that he unlock and open up the turtle-back of his car. Counsel argue:

"Did they (the officers) do anything consistent with the claim of arrest for violation of the traffic rules? No. They asked him if he knew where the court house was, and then directed him to 'drive your car up there, and we will have the judge come down and open up that turtle.' "

On cross-examination, Trooper Carl testified that after he had stopped the defendant the truck driver operating the truck that had been passed in a no-passing zone "pulled up and called me and said he had seen what had happened." What had happened, was not further developed, and the defendant did not when he testified deny that a truck driver had or had not stopped his truck while defendant was being questioned by officers, or whether defendant overheard any such conversation as that stated by the officer. We therefore conclude that the evidence on motion to suppress was insufficient to disclose that the arrest was a subterfuge, and conclude that there was sufficient basis in the evidence to support the trial court's conclusion that the officers did in good faith arrest the defendant for the traffic violation of passing a truck on a highway in a no-passing zone, and in their presence. Mitchell v. State, 73 Okla. Cr. 184, 119 P. 2d 99, Byford v. State, 90 Okla. Cr. 230, 212 P. 2d 476.

This brings us to the real problem in this case, as to the extent of the search and seizure of a person's automobile as incident to his lawful arrest without a warrant, where the arrest is simply for the violation of some provision of the Uniform Traffic Code, Tit. 47 O.S.1951 § 121.4(g) (ordinances of a city or town) in this case "passing in a no-passing zone."

The answer is not so simple as on the face would appear. The more we have studied the question, the more convinced we have become that a re-examination of the subject is required.[4]

While the issue, it is true from reported cases, is forced by involvement of an habitual whiskey runner,[5] the same principle would obtain where a physician

4 That such action may be healthy, see The Eighth Annual Benjamin N. Cardozo Lecture delivered before the Association of the Bar of the City of New York, by Associate Justice William O. Douglas of the Supreme Court of the United States, on "State Decisis", as reported in Vol. 21, Journal 7 of the Journal of the Oklahoma Bar Association, dated February 25, 1950, and quoted In Roberson v. State, 91 Okla. Cr. 217, 244, 218 P. 2d 414, 426, 427; also see other cases there cited on the subject.

5 Brinegar v. United States, 10 Cir., 165 F. 2d 512; affirmed 338 U.S. 160, 69 S. Cr. 1302, 93 L. Ed. 1879, rehearing denied 338 U.S. 839, 70 S. Ct. 31, 94 L. Ed. 513.

hurrying to a call might run a stop sign, pass a car in a no-passing zone, or be guilty of some other minor traffic violation and be stopped by the police for the search of his bags and his car; or perhaps there would be involved a minister of the Gospel on his way to serve the sick or mentally ill, or school girls with their bags packed and on their way to their campus, or any other of many classifications of persons ordinarily making up our most substantial and law-abiding citizenship.[6]

The argument of counsel for the defendant as to the issue cannot be lightly cast aside. It is stated in effect that it was never the intent of this court to permit the exception to the rule against unreasonable searches and seizures without a warrant, Art. II, § 30, supra, by loose definition or extension of the exception to get so far out of hand as to consume the rule. It is argued that there is no right to conduct an exploratory search as incident to a lawful arrest; that the subterfuge is obvious where the driver of a motor vehicle "is stopped and arrested [and his car searched] for [by reason of] the commission of a misdemeanor involving the violation of the Uniform Traffic Code [Tit. 47 O.S. 1951 §§ 121.1-13] consisting of acts totally unrelated to any other illegal activity or the possession of whiskey." It is further argued:

"That there is no connection between 'pasing in a no-passing zone' and the transportation of whiskey or the suspected possession of whiskey in the turtle-back of the automobile stopped beggars argument. There is absolutely nothing conducive to the proof of the offense for which the arrest is ostensibly made to be found in the search of the turtle-back of the offending car. The fact that a motorist passed in a no-passing zone certainly does not indicate that he is engaged in the illegal transportation of contraband whiskey; if in fact whiskey is discovered it is in no matter material to the proof of the offense for which the arrest is made."

It is argued that the traffic violation is complete within itself, and that no further evidence is needed. Bitter complaint is made of the subterfuge of officers and the claimed general practice of stopping motorists and searching their cars, and pretending that the motorist had violated some traffic regulation and that such gave them the right to make the search. Many articles from law journals are cited as to the lawlessness of officers. This court has never sustained a search where the evidence as reflected by the record convinced it that the arrest was a subterfuge for a search.[7]

---

6 See the dissenting opinion of Justice Frankfurter in United States v. Rabinowitz, supra, a couple of paragraphs of which at this point we are persuaded to quote [339 U.S. 56, 70 S. Ct. 436]:

"It is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people. And so, while we are concerned here with a shabby defrauder, we must deal with his case in the context of what are really the great themes expressed by the Fourth Amendment. A disregard of the historic materials underlying the Amendment does not answer them.

"It is true also of journeys in the law that the place you reach depends on the direction you are taking. And so, where one comes out on a case depends on where one goes in. It makes all the difference in the world whether one approaches the Fourth Amendment as the Court approached it in Boyd v. United States, 116 U.S. 616, 6 S. Ct. 524, 29 L. Ed. 746; In Weeks v. United States, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L.R.A. 1915B, 834, Ann. Cas. 1915C, 1177; in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed., 319, 24 A.L.R. 1426; in Gouled v. United States, 255 U.S. 298, 41 S. Ct. 261, 65 L. Ed. 647, or one approaches it as a provision dealing with a formality. It makes all the difference in the world whether one recognizes the central fact about the Fourth Amendment, namely, that it was a safeguard against recurrence of abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution, or one thinks of it as merely a requirement for a piece of paper."

7 Mr. Justice Sutherland in Byars v. United States, 273 U.S. 28, 33, 47 S. Ct. 248, 250, 71 L. Ed. 520, with reference to the Fourth Amendment, which of course would similarly apply to our Art. II, § 30, said:

"The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any rival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right."

The caution expressed, not by a court, but by the chief federal enforcement officer, Mr. J. Edgar Hoover, director of Federal Bureau of Investigation, United States Department of Justice, in an

While the motor vehicle forced the exception to the rule against search without a search warrant as enunciated in the Carroll case, 1925, and in People v. Case, 1922, supra, the motor age was only coming into being during those times, and the problems presented have so multiplied as to form the main concern of the governing boards of cities and towns throughout the land, chiefly involving the flow of traffic and parking. The death rate from motor accidents rivals that of our severest wars. There are one-way streets, no-parking zones, zones restricted to parking of particular kinds of vehicles, zones restricted to pedestrian traffic, no-left turn corners, some left turn after stop, some by mere arm signal. In some places a taillight signal is sufficient to indicate a turn or a stop, and other places require an arm signal; there are various lanes in some metropolitan areas, some restricted exclusively to various classifications of traffic, and requiring a genius to get out of after once getting in, without violating the law.

The change in the picture may be more readily visualized when we recall that Lindberg did not fly the Atlantic until May 20-21, 1927; that the first parking meters installed in any city in the world were installed in Oklahoma City on July 16, 1935, and that this state did not find it necessary to establish a highway patrol until in 1937; and that we did not have electrical stop and go signals in the United States, transcontinental bus and truck lines or commercial air lines until some time after World War I. In this connection, it is interesting to note that although the Fourth Amendment to the Federal Constitution was adopted in 1791, the cases from the Supreme Court of the United States treating the question that we are now considering, have practically all come about since the advent of the motor vehicle, the National Prohibition Act, now repealed of course, and cross-country highways. And in the State of Oklahoma the development of our doctrines have been since the end of World War I, which, in general heralded the three factors named.

The traffic regulations as a whole are so complicated now in cities and towns and even out on highways that it requires a very alert person indeed to escape violating some of the rules and regulations at some time. And the violation of the minor ones subjects one to arrest and a fine, and even to a general search if some of the principles enunciated are literally construed. The complications are multiplying rapidly. It is therefore time, we think, to become cognizant of the changes since the basic cases that we have referred to, in determining just what an officer may search for, if anything, on arresting a citizen for some minor traffic violation, whether it be within a city, village or

---

article appearing in 37 Iowa Law Review, 175, entitled: "Civil Liberties and Law Enforcement", is worthy of thought. Said he:

"We can have the Constitution, the best laws in the land, and the most honest reviews by the courts—but unless the law enforcement profession is steeped in the democratic tradition, maintains the highest in ethics, and makes its work a career of honor, civil liberty will continually and without end—be violated. But this is wholly unnecessary. * * *

"This nation was founded on the historic principle that the individual must be protected from the tyranny of the State. Washington. Franklin and Madison witnessed the terror of a government of men. Therefore, they resolved, through the Constitution, to establish the supremacy of the law. * * * The wisdom of the founding fathers lives still, for the Constitution remains today the basic document of the American system of government, the culmination of centuries of thought, suffering and faith for the principles of freedom and justice among men. * * *

"Law enforcement arises from law; its sacred responsibility is to uphold the basic laws of the land and to give meaning to the democratic traditions of America. * * * Civil liberties cannot exist without law enforcement; law enforcement without civil liberties is a hollow mockery. * * *

"Law enforcement, however, in defeating the criminal, must maintain inviolate the historic liberties of the individual. To turn back the criminal, yet by so doing, destroy the dignity of the individual, would be a hollow victory.

"* * * This particular area, where the officer is temporarily 'on his own' so to speak, is of tremendous importance. * * * It is in this area that law enforcement ethics must rise to prevent abuses, such as third degree techniques, unlawful arrest, unreasonable detentions, illegal searches and seizures. These practices are anathema to civil liberties, destroying the very heart of the American democratic system."

out upon a public highway. For, as aptly stated by Judge Learned Hand, in United States v. Poller, 2 Cir., 43 F. 2d 911, 914, 74 A.L.R. 1382, *"limitations upon the fruit to be fathered tend to limit the quest itself"*. (Emphasis supplied.)

In giving consideration to the Federal cases, which we shall, so far as the question that we are interested in is concerned, the fact that the "probable cause" rule prevails in the Federal jurisdictions and does not in our state jurisdiction, can have no bearing. We may, for the purpose of considering what may be searched for after an arrest, assume that the arrest is legal. As said in United States v. Thomson, 7 Cir., 113 F. 2d 643, 645, 129 A.L.R. 1291, 1295: "The right to search when defendant is arrested is no greater than when the search is made pursuant to a search warrant." United States v. Lefkowitz, 285 U.S. 452, 52 S. Ct. 420, 423, 424, 76 L. Ed. 877, 82 A.L.R. 775, is cited and the following quotation therefrom is made: "An arrest may not be used as a pretext to search for evidence." The Lefkowitz case condemned the seizure of all kinds of articles which had nothing to do with the offense charged. The rule on the question at issue is stated in 1 Bishop's Criminal Procedure, § 211, as follows:

"The arresting officer ought to consider the nature of the accusation; then if he finds on the prisoner's person, or otherwise in his possession, either goods or money which he *reasonably believes to be connected with the supposed crime as its fruits, or as the instruments with which it was committed, or as supplying proofs relating to the transaction, he may take and hold them to be disposed of as the court directs.*"

The above rule has been approved in Carroll v. United States, supra, Weeks v. United States, 232 U.S. 383, 392, 34 S. Ct. 341, 58 L. Ed. 652, L.R.A. 1915B, 834, Ann. Cas. 1915C, 1177. And see Agnello v. United States, supra. The same rule is also announced in Holker v. Hennessey, 141 Mo. 827, 42 S.W. 1090, 39 L.R.A. 165, 64 Am. St. Rep. 524; Ex parte Hurn, 92 Ala. 102 9 So. 515, 13 L.R.A. 120, 25 Am. St. Rep. 23; Getchell v. Page, 103 Me. 387, 69 A. 624, 18 L.R.A., N.S., 253, 125 Am. St. Rep. 507.

Our earliest consideration of the rule seems to have been in the case of Keith v. State, 1925, supra, where though in that case the statement was dicta, it was said [30 Okla. Cr. 168, 235 P. 632]:

"A person lawfully arrested may as an incident thereto be searched and articles found in his possession which are the subject of crime or the means of committing it, or which may be of use as evidence at the trial, or which may be used in committing violence or in effecting an escape, may be seized."

Cited was 2 R.C.L. 467, and 5 C.J. 434. See, also, 6 C.J.S., Arrest, § 18. Those authorities cited some of the cases above listed. This rule was approved and adopted in Barfield v. State, 68 Okla. Cr. 455, 99 P. 2d 544; Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549. See also Lee v. State, 66 Okla. Cr. 399, 92 P. 2d 621. So we find that the rule followed in the Oklahoma state courts is practically identical with the rule as stated by Bishop and as followed by the Federal courts.

Coming now to the practical application of the rule approved by this court, it has been held in a long line of cases that where one is arrested for any traffic violation or any other offense committed in the presence of the arresting officers, and they then discover that the driver of the vehicle is in a state of intoxication, that as an incident to his arrest his vehicle may be searched for liquor, which of course would be pertinent as proof in support of a charge of drunk driving or more properly operating a motor vehicle while under the influence of intoxicating liquor. Worley v. State, 77 Okla. Cr. 154, 140 P. 2d 246; Moore v. State, 51 Okla. Cr. 411, 1 P. 2d 813; Raper v. State, 96 Okla. Cr. 18, 248 P. 2d 267.

If officers by use of their senses discover liquor in a vehicle, as where it was dripping from the floor, Arnold v. State, 70 Okla. Cr. 203, 105 P. 2d 556, Hutson v. State, 72 Okla. Cr. 61, 112 P. 2d 1109, or where they saw it in open sight in the vehicle, as an incident to arrest for a misdemeanor committed in their presence, they could search the vehicle. Blair v. State, 75 Okla. Cr. 265, 130 P. 2d 545; Worley v. State, supra; Arnold v. State, supra; Matthews v. State, supra; Sands v. State, 36 Okla. Cr. 55, 252 P. 72; Kizer v. State, 96 Okla. Cr. 92, 249 P. 2d 132; Pierce v. State, 96 Okla. Cr. 276, 253 P. 2d 194; Edwards v. State, 94 Okla. Cr. 11, 228 P. 2d 672; Golden v. State, 75 Okla. Cr. 121, 129 P. 2d 202; Hutchinson v. State, 74 Okla. Cr. 30, 122 P. 2d 395.

In Sims v. State, 73 Okla. Cr. 321, 121 P. 2d 317, the officers observed the defendant driving his car from one side of a public road to the other, then run off the shoulder and run a stopsign in turning into a second highway. The officers forcibly stopped Sims and arrested him for violation of the rules of the road. They could smell whiskey on Sims' breath, but he could walk a straight line. One of the officers observed a part of a pint of whiskey on the front seat of the car in open sight and another pint on the car floor. A search of the turtle-back disclosed packages of whiskey. The officers were justified under such circumstances, of course, in searching for any additional liquor for the purpose of being used as evidence in support of a charge of possession or a charge of transportation, one or both.

See, also, Blair v. State, supra, and Boardwine v. State, 64 Okla. Cr. 49, 76 P. 2d 1081. and many other cases where the defendant was arrested for some traffic violation and the officers discovered whiskey in the seat or floor of the car without search, or discovered the driver under the influence of intoxicating liquor, and where the search followed, and where such searches were justified by reason of the materiality of the liquor to support the charge either of possession, driving a motor vehicle while under the influence of intoxicating liquor, or transportation of intoxicating liquor.

There are cases, however, from this court that go further than such cases as the Barfield, Matthews and Lee cases, supra, that established the exception to the rule, found it necessary to go in sustaining the right of search and seizure without a warrant.[8]

The first case in this jurisdiction that comes to our attention where there was involved the lawful arrest of a motorist for a misdemeanor committed in the presence of the arresting officer and the incidental search, not only of the person, but of the entire vehicle, is that of Smith v. State, 1931, 52 Okla. Cr. 315, 4 P. 2d 1076. In that case the sheriff of Kiowa county and the deputies saw the defendant upon the highway and followed him for twelve miles. The sheriff testified that the defendant travelled at 58 or 60 miles per hour (unlawful at that time) so the sheriff finally overtook the defendant, arrested him for speeding and searched the turtleback of his car and found 24 gallons of whiskey. Prior to trial a motion to suppress the evidence was filed on the ground that it had been obtained by an unlawful search. On hearing, the motion was over-ruled. In sustaining the conviction, this court said:

"It is well settled that an officer making an arrest has authority to search the person and immediate place of arrest of his prisoner and to take from him any dangerous weapons or anything that he may reasonably deem necessary

---

[8] Usually there were important and special circumstances in addition to the traffic violation, such as the tossing of liquor or other contraband from the car, the use of firearms, the indication of intoxication, liquor in plain view, the discovery of well known and dangerous criminals in the vehicle, acting surreptitiously and attempting to escape. But see O'Dell v. State, 80 Okla. Cr. 194, 158 P. 2d 180, and Scott v. State, 84 Okla. Cr. 171, 180 P. 2d 196.

to his own or the public safety or to prevent the escape of his prisoner or which might be used as evidence against him on the trial or which he believes to be connected with the offense charged or that may give a clue to the commission of the crime. 2 R.C.L. p. 467, § 25, notes; 5 C.J. p. 434, § 74F, notes; Reifsnyder v. Lee, 44 Iowa [101] 104, 24 Am. Rep. 733; Berg v. State, 29 Okla. Cr. 112, 233 P. 497; Washington v. State, 37 Okla. Cr. 415, 259 P. 150; Callahan v. State, 42 Okla. Cr. 425, 276 P. 494."

The opinion goes on to emphasize that:

"This court will not uphold an unreasonable search where it appears that one is illegally arrested on some subterfuge for the purpose of justifying or attempting to justify a search otherwise unlawful. If the arrest is unlawful, the search is unlawful. Wallace v. State, 294 P. 198."

An examination of the rules promulgated by 2 R.C.L. p. 467, § 25, and 5 C.J.P. 434, § 74 (see, also, 6 C.J.S., Arrest, 18), giving the words their ordinary meaning, fail to develop that such citations are authority for the proposition that once there is a lawful arrest the accused may be searched not only for evidence of or the fruits of the crime for which arrested, but in addition for evidence of some other imagined offense.[9] Without doubt where contraband would be found within the permissive area of search following a lawful arrest, such contraband could be, and it would be the duty of the officers to take the same into possession and it might thereafter be used in evidence in a prosecution. In this connection contraband is defined as the possession or transportation of anything prohibited or excluded by law. See Webster's New International Dictionary, and Roget's International Thesaurus; Black's Law Dictionary.

In Coffelt v. State, supra, the conviction of the defendant was reversed by reason of the admission in evidence of property seized without a valid search warrant, and not seized as an incident to a legal arrest. An officer had been at defendant's place looking for stolen live stock and defendant consented that the officer might look his place over, and in the process the officer observed some personal property that he thought had been taken in a recent burglary and arrested the defendant. Later a search warrant was issued that proved to be invalid, but on trial the court permitted the evidence obtained by use of the invalid search warrant to be admitted. Apparently there was no other evidence sufficient to support the conviction.

The court referred to the cases of Gaines v. State, 28 Okla. Cr. 353, 230 P. 946, and Davis v. State, supra, and approved the rule of law therein contained governing the search of a person or his premises incident to a legal arrest, but pointed out that the facts in the case at hand did not bring it within the rule. The court then proceeded to summarize the rule promulgated in the Gaines and Davis cases that was being referred to, in the following language:

"Certainly, one legally arrested may be searched for weapons or things which might facilitate his escape, or for papers, instruments, and property, of an evidentiary character which may be or may have been, used in the commission of the crime charged, *or possibly of any other crime.*" (Emphasis now supplied.)

It was further stated that the person arrested might be taken to a place of safety, before such property is seized, but there must not be unnecessary delay.

We have examined the Gaines and Davis cases and as well the cases from other jurisdictions cited in the Coffelt opinion to discover authority for officers

---

9 There are cases from other jurisdictions permitting the search of the entire vehicle where the driver is arrested for any crime, though the search of the vehicle could have no bearing on the crime for which arrested. Tolliver v. State, 1923, 133 Miss. 789, 98 So. 343; Haverstick v. State, 1925, 196 Ind. 145, 147 N. E. 625, and cases cited.

to specifically search a person or his immediate surroundings after his lawful arrest, for evidence of other crimes than an exploratory search might develop that he had committed. The authorities in the opinion do not support the concluding clause: [that search might be made for evidence of] *"or possibly any other crimes."* This statement was, of course, not only dicta, but an ipse dixit statement; that is, one where supporting authority was not listed. But this inadvertent statement in the Coffelt case has been cited in 6 C.J.S. Arrest, § 18, page 623, footnote 18, as authority for the proposition that a person once lawfully under arrest, the officers might in effect without more, conduct a general exploratory search for evidence not only of the crime for which the arrest was made, but for evidence that might support charges for other crimes that might be discovered.

Neither the Gaines nor Davis cases, nor the later cases by this court, of which we have cited the Barfield, Matthews and Lee cases, supra, are authority for such a proposition. That is to say, there is no specific language to such effect. It should not be forgotten that we are considering an exception to the constitutional provisions already stated. We have searched in vain for a case from this court where the proposition at issue has been treated. We have found no well considered case from any other court justifying such an extension of the exception. We have called on the Attorney General to amplify his brief and give us reasons for the further deviation from the provision against unreasonable searches and seizures, but we have not been aided by any cases treating the contentions raised by the defendant. We have found cases where such search of the entire motor vehicle as incident to an arrest for a minor traffic violation has been made, and where such search has been upheld, but the basis for such holding seems to have been simple judicial sanction.

So far as we can determine, based solely on cases reaching this court on appeal, officers have not usually after an arrest of a motorist for a minor traffic violation, seen fit to harass such citizen by a search of his person and immediate surroundings such as the seats of his car and perhaps the glove compartment unless from the conduct, appearance or past knowledge of such motorist, he deemed it was necessary for his own safety, and perhaps for the safety of others, to do so. And rarely have they gone further and searched the locked turtle-back of the car unless the driver acted as if intoxicated or under the influence of narcotics, or unless there was discovered in plain sight *or in the search for weapons*, contraband of some nature, which of course would justify a complete search for similar additional evidence.

This court has uniformly adhered to the principle of the strict upholding of Art. II, § 30 of our Bill of Rights, Fourth Amendment to the Constitution of the United States, and has treated this obligation as necessary to the preservation of the American Way of Life.

There have been many cases for the various reasons there stated, where this court has determined the search unreasonable and therefore in contravention of the constitution. See Evans v. State, 71 Okla. Cr. 239, 110 P. 2d 621; Barnett v. State, 94 Okla. Cr. 293, 235 P. 2d 555; Leach v. State, 94 Okla. Cr. 334, 235 P. 2d 968; Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Williams v. State, 34 Okla. Cr. 359, 246 P. 895; Kirk v. State, 30 Okla. Cr. 198, 235 P. 624; Klein v. State, 26 Okla. Cr. 173, 223 P. 201; Bowdry v. State, 64 Okla. Cr. 86, 77 P. 2d 753; Walker v. State, supra; Bohannon v. State, 66 Okla. Cr. 190, 90 P. 2d 675; Graham v. State, 86 Okla. Cr. 9, 184 P. 2d 984; Jones v. State, 88 Okla. Cr. 243, 202 P. 2d 228; Saltsman v. State, 95 Okla. Cr. 228, 243 P. 2d 737; Simmons v. State, 94 Okla. Cr. 18, 229 P. 2d 615; Morris v. State, 66 Okla. Cr. 384, 92 P. 2d 609; Banker v. State, 61 Okla. Cr. 169, 66 P. 2d 955; Holland v. State, 93 Okla. Cr. 180, 226 P. 2d

448; Isbell v. State, 7 Okla. Cr. 736, 123 P. 1130; Ingraham v. State, 48 **Okla.** Cr. 178, 290 P. 344.

The lesson to be learned from the cases, then, it seems to us, when applied to the permissible extent of the search of a motor vehicle after a lawful arrest of the driver, as in this case following the commission of a misdemeanor in the presence of the officers, is: *Was it reasonable?* As stated by Judge Yankwich in United States v. Bell, D.C. Cal., 48 F. Supp. 986, 992:

"Courts * * * make reasonableness not a matter of abstract theory, but a pragmatic question, to be determined, in each case, in the light of its own circumstances."

And as stated by Justice Butler in GoBart Importing Co. v. United States, 282 U.S. 344-357, 51 S. Ct. 153, 158, 75 L. Ed. 374:

"There is no formula for the determination of reasonableness [of a search and seizure,] but each case is to be decided on its own facts and circumstances."

Such was the effect of the holdings in People v. Case, supra, and Carroll v. United States, supra, and this court has thus expressed the proposition in **any** number of cases: *Whether search and seizure without a search warrant is unreasonable within the constitutional provisions forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search and seizure is made.*

The great problem has always been in the application of the rule. But it should be understood by law enforcement officers that if the record discloses that the search of the person or any portion of his car was unreasonable, such search will not be sustained regardless of what such unreasonable search may have turned up.

Going back to the original inquiry forced by defendant's second proposition, *at the time of the arrest, what were the fruits to be gathered in this case?* The answer without doubt is: Nothing, except to get the prisoner without unnecessary delay before an examining magistrate. Tit. 22 O.S. 1951 § 181; **Ward** v. State of Texas, 316 U.S. 547, 62 S. Ct. 1139, 86 L. Ed. 1663; approved in Benton v. State, 86 Okla. Cr. 137, 190 P. 2d 168.

The officers satisfied themselves by a search of the person and the seats **of** the car and the glove compartment that Brinegar was not armed. Apparently he must have impressed the officers as an easy-going and a harmless sort of individual, or else the officers were acquainted with him and his history (though they did not so specifically say in their testimony), for they trusted him to drive on to Vinita, but on reaching there directed him to engage a taxi and go home and look for the keys to the turtle-back of his car. Specifically, what could there have been in the turtle-back that would have had any bearing on the charge for which he was arrested? The answer, "nothing" has already become self-evident. Obviously, then, the arrest was used simply as "a pretext to search for evidence of some other imagined offense", so strongly condemned in United States v. Lefkowitz, supra, and many other cases, if the search must be justified simply as incidental to the arrest for the traffic violation.

It becomes clear, it seems to us, by the simplest reasoning, that the arrest for passing in a no-passing zone did not ipso facto entitle the officers to have the turtle-back of the car unlocked; and that while they by the arrest for the traffic ·violation had a right to safely keep the car until the accused at first opportunity and without unnecessary delay, could be arraigned before a magistrate for the offense for which arrested, they had no right at the scene of the arrest

or anywhere else, purely as an incident to the arrest for the traffic offense of passing in a no-passing zone, to do more than search the person and immediate surroundings for weapons, which would be in the interest of the safety of the arresting officers and to prevent the escape of the prisoner. If this was all that the facts declared to us, the case by force of the reasons stated would have to be reversed. But while we hold with the defendant on his second proposition, as heretofore summarized, the case must be affirmed by reason of the fact that in the process of searching the defendant for firearms, and prior to the search of the turtle-back of the car, a fraction of a half pint of whiskey was found in the glove compartment of the automobile, a reasonable and convenient place where motorists may be expected to carry their firearms, if carried, where not on the person. This evidence was sufficient in itself to have supported a charge of illegal transportation of intoxicating liquor. Having discovered this liquor, the officers were entitled to search the entire car for any additional whiskey. By force of the very reasoning that has impelled us to uphold defendant's second proposition, the legally discovered whiskey opened the gate for a quest otherwise barred, and not for firearms under the facts disclosed, but for additional contraband liquor. The discovery of liquors in a place where the officers had a right to search for firearms incidental to a lawful arrest, automatically thrust from defendant the protecting arm of the great provision of our Bill of Rights promulgated not for the purpose of shielding the law violator, but for the protection of the law-abiding citizen, even though in such endeavor it may at times protect the surreptitious and lawless. Thus the subsequent search of the turtle-back of the car for liquor became legal; contraband was found, being in this case liquor, so the search continued for more of the same. The defendant, it is true, was prosecuted for only that part of the liquor found in the turtle-back and not for that found in the glove compartment, but such can have no bearing, it having been determined that the search of the turtle-back was legal.

The case must, by force of the foregoing, be, and it is affirmed.

JONES and BRETT, JJ., concur.

### Supplemental Opinion on Rehearing.

POWELL, P. J. Counsel have devoted so much time to their brief or "suggestions" and to a supplemental brief, all in support of their petition for rehearing, and the technique of presentation has been such that we feel impelled to consider that portion of the opinion about which complaint is made. That part, in spite of a portion of the opinion considered by counsel as salutary, did not permit the accused to escape the penalty assessed for the admitted violation of the constitutional and statutory provisions of this state prohibiting illegal possession of intoxicating liquors. The exhaustive treatise is an excellent presentation of the view of counsel long used to vigorous representation of persons violating the liquor laws. The reasoning would bear evidence of that. And the state is not without bias in that favored would be the rule to permit exploratory searches after any arrest. So, in our effort to arrive at a reasonable and rational solution of the problem, much time was devoted to both the preparation and thereafter to the consideration of the conclusions of this court now complained of. The present effort is to clarify some points claimed subject to misunderstanding.

It is insisted that before the right to search for firearms accrued to the officers they must have had reasonable ground for such action. With this we agree. But we conclude that in that the defendant was arrested in the nighttime after passing one truck in a no-passing zone and after crowding another off on the shoulder of the road, that the officers in approaching the accused's car

would have been most negligent and unnecessarily risking their lives if they had not observed elementary precautions in making the arrest under the conditions then confronting them, and which required the search of the defendant and his immediate presence, such as the seats and glove compartment of his car, not for contraband, it is true, but for weapons, in the interest of their safety and to prevent escape. The assumption is that officers perform their duties as justified by the circumstances. This, of course, is a rebuttable presumption. And it is true that while their subsequent direction to the defendant to drive his car to the courthouse at Vinita, some eight miles distant (but under the surveillance of the officers who followed), demonstrated that they no longer considered him a risk and liable to escape, after the search of the glove compartment and the seats, and demonstrated that they did not consider him under the influence of liquor, such could not nullify their original right upon the reasonable grounds stated, to satisfy themselves as to these matters.

We would make clear that not every arrest of a motorist for a traffic violation would justify a search of the seats and glove compartment for weapons. There must be facts and circumstances observed by the officers to cause them in good faith to believe that the motorist is armed, is dangerous, or apparently intends to escape. Each case necessarily must stand or fall on its particular facts and circumstances.

There is the question as to when the officers demanded that the defendant "get out and open up that trunk". From what we have said in the opinion, the officers had no right to search the turtle back simply by reason of the traffic violation.

On direct examination the defendant testified:

"Q. What happened immediately upon stopping? A. They stopped me and told me that I had passed a truck, or two trucks, in a no-passing zone. Q. What did you say? A. I said that I didn't. Q. They then said you crowded a truck off the road, what did you say? A. I said that I didn't. Q. Then what did they say? A. Said, 'Get out of the car and open up that trunk.' "

On cross-examination on the point of what happened, defendant testified:

"Q. Mr. Brinegar, when you were stopped on the highway, a search followed? A. They took a light and shined it around. Q. Did they search inside the automobile? A. I wouldn't really say they searched. They shined a light. Q. Do you know whether or not they found anything? A. I think they found a half pint of whiskey—it had some of it taken out."

Officer Carr testified that after they observed the defendant pass a truck going up a hill and force an oncoming truck off the highway, they stopped defendant and placed him under arrest. He was asked: "What did you find in the vehicle at the time when you stopped it?" He answered that they found a pint bottle of whiskey, with about half gone. That they did not immediately search the rest of the car because it was locked.

The accused's downfall here was having the liquor in a place convenient for rapid procurement and use of firearms or other weapons. And the circumstances stated having afforded a reasonable foundation for the search for weapons, to grasp from the officers the very right affording a reasonable hope of survival in their precarious duties, would tend to tear down law enforcement, and destroy the very Constitution accused at this time so passionately professes to approve and see upheld, if it would in effect excuse him. And while a person charged with crime should receive the benefits of every constitutional provision, regardless of his past violations of the law, where from his admitted trade he has been in the

habit of violating with impunity that very constitution for which he now expresses so great concern, it follows that the argument must fall rather flat.

Undoubtedly, if the officers had permitted the defendant to take possession of his car and take it out of their presence, any right they may have acquired to search it at a later time as incident to the arrest would have been lost, and thereafter a search warrant would have been required. But here the officers from what we have said, acquired the right to search the turtleback of the car for more contraband whiskey after finding the part of a pint in the glove compartment. They took possession of the car. There was continuity of possession until the turtleback was finally opened. They did not want to damage defendant's turtleback if he did not have contraband. He pretended not to have the key and advised the officers that it was at his home in Vinita, where they were taking him to jail. And on arrival at Vinita accused was permitted to take a taxi and go home to procure the key, but he returned with further excuses. The officers incarcerated accused and decided to wait until daylight to complete the search of the car. They testified that the back was opened soon after the county attorney opened his office after 8:00 a.m. There had been six or seven hours delay, according to the testimony of the officers. Apparently it was convenient to leave the point of arrest out on the highway some eight miles from the county seat and go to the county seat to complete the search and to incarcerate the accused. We do not follow the reasoning that under the circumstances as here, would have forced the officer to tear into defendant's car on finding it locked, rather than taking it out of the elements and away from possible traffic hazards and to a safe place at the county seat. It had to be taken into custody and impounded by reason of the traffic violation, and liquor violation until a charge could be filed and defendant arraigned and bond fixed. It was even subject to possible forfeiture had the county attorney seen fit to take such proceedings.

Counsel state:

"We most earnestly and respectfully submit that there can be no real question but that under the authorities and in law there is no distinction to be drawn as between search of a stationary automobile and a fixed building." And it is further stated: "Whether or not the officers in this case had a right to search Brinegar's car on the highway is most doubtful; but whether or not they did, *at a different time and place*, the next morning and at a place distinct from the scene of the arrest, their prior right served them no purpose. They only had the right to exercise their power then and there! They had no right to exercise their power thereafter or elsewhere!"

We have given consideration to the cases from this court and being in addition to Walker v. State, 89 Okla. Cr. 66, 205 P. 2d 335; Simmons v. State, 94 Okla. Cr. 18, 229 P. 2d 615; Thomas v. State, 27 Okla. Cr. 264, 226 P. 600; and Dean v. State, 37 Okla. Cr. 396, 258 P. 812, earnestly urged as supporting defendant's argument just quoted. In the Dean case the two defendants were arrested coming out of a drugstore on some undisclosed charge and taken to jail, and one of the defendants gave an officer the key to his car parked at the curbing near the drugstore where he was arrested, and requested that the key be delivered to his brother. The officer proceeded to search the car and found a small amount of whiskey. Of course, the arrest being distant from the car, gave the officers no right to search in the absence of a search warrant, even if attempted immediately upon arrest. The key to the holding was the fact that the right to search without the aid of a search warrant never did exist.

In the Walker case the defendant was arrested for "loitering and investigation" and placed in jail. A key was obtained from him by the officer and

used the day after to search his apartment without the defendant's consent and without a search warrant. The basis for holding the search illegal was not the delay after the arrest, but for the reason that at no time did the officers acquire from the circumstances, the right to search the apartment without the authority of a search warrant.

In the Simmons case this court merely held that incident to the lawful arrest of the defendant, the officers had the right to search the person and his immediate surroundings, but not to search the accused's home in another county in the absence of a search warrant.

In the Thomas case the officers observed the defendant come out of his home and go toward a waiting automobile, carrying a bottle. The officers accosted him and he threw the bottle, breaking it, and said: "You fellows haven't got anything on me." Fragments of the bottle recovered by the officers contained whiskey. The defendant was immediately arrested and taken to jail. Later, the officers returned and searched defendant's home without a search warrant, and found two more bottles of whiskey.

The punishment on conviction was modified in that it was held that the two bottles of liquor later obtained from the home were inadmissible. The reasons for the holding were not detailed. However, if the right existed to search the home without a warrant, at the time of the arrest, the right was not a continuing one to some disconnected time. But suppose the right accrues to officers to search a home or a place of business either by reason of a proper search warrant or otherwise, but a room or vault is discovered that is barred by steel and padlocked or locked by a tumble lock and the search would be in the nighttime. Could it in reason be argued that the officers thus stymied in completing the search, and with good reason to believe that contraband was there hidden, might not wait until an acetylene torch might be procured or a key or the combination be found by the accused who had so promised, so long as the officers had continuity of possession up to the culmination of the search thus several hours delayed? Would the awaiting of day and either the procuring of the key to the lock or a torch be unreasonable? No case has been cited where a few hours delay in completing a search has been held unreasonable and illegal (where otherwise legal) where there was at no time an abandonment of the search and there was at all times a continuity of possession of the property in process of search.

It is still our conclusion that the delay in opening the turtleback of defendant's automobile was not unreasonable, under the facts presented, and accordingly, the propositions urged on rehearing are denied, and the opinion as written is reaffirmed.

JONES and BRETT, JJ., concur.