Lawrence C. "Dick" DOYLE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12536.

Criminal Court of Appeals of Oklahoma.

Jan. 8, 1958.

Elmore A. Page, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Lawrence C. "Dick" Doyle was charged by information filed in the district court of Tulsa County with the offense of unlawful possession of intoxicating liquor, second and subsequent offense, a felony. A jury was waived and defendant was tried before the court, found guilty and punishment fixed at one year in the State Penitentiary at Mc-Alester, and a fine of $500.

Appeal by petition in error and case-made was filed in this court on September 12, 1957 and brief was due thirty days thereafter, but no brief was filed, due to illness of counsel. The case was assigned for oral argument on the docket of December 4, 1957 but was stricken and reset for December 18, 1957, at which time the case was submitted on the record. No brief has been filed to date. However, we have carefully read the record; the docket of this court is up to date, and further delay for briefs is

not merited, as there is no complicated legal problem.

We would take notice of error distinct in the record.

The question arises as to whether or not the court should have sustained a written motion to suppress the evidence that was filed prior to trial, and where it was agreed that the motion might be disposed of by the court after hearing the evidence of the State, and thereafter that judgment should be entered, as the facts would require.

Raymond Pruitt, deputy sheriff of Tulsa County, stated that on February 15, 1957 a bench warrant for the arrest of defendant had been delivered to him for service. The warrant received in evidence by agreement stated that an information had been filed against the defendant in the court of common pleas of Tulsa County, charging Lawrence D. Doyle (discrepancy in name later corrected) with the crime of unlawful possession of intoxicating liquor, and "any marshal or deputy marshal of said court, or any sheriff or deputy sheriff, or any other officer authorized by law to serve process" was directed to bring said defendant before the court of common pleas of Tulsa County to answer the information. See 22 O.S. 1951 §§ 454, 456, 457.

Witness stated that he and deputy Bliss went to defendant's residence one-half mile south and one-half mile east of Bixby, in Tulsa County, to serve the warrant, and that he did arrest the defendant.

On cross-examination of Mr. Page, counsel for defendant, witness said that he and officer Bliss arrived at the defendant's residence at approximately 1:30 p. m., February 15, 1957; that he and Bliss went to the breezeway and knocked and someone said, "Wait just a minute", and then Mrs. Doyle, whom they then observed ironing in the kitchen, said: "Come in"; that he then went in and asked her if "Dick was there"; and she said "Yes, he is." He said he then told Mrs. Doyle that he had a bench warrant for her husband's arrest, and she told him, "He is in there on the bed, asleep", and, said witness: "I walked on through the living room to the bedroom on the west side, the southwest corner of the house". Witness admitted that he did not ask the wife to go get her husband, nor did he attempt to call the defendant. He said that when he entered defendant's bed room he informed defendant that he had a bench warrant for his arrest, and that defendant then got up, and he told defendant that he was under arrest.

Witness said that during this time he did not know where officer Bliss was, but after the arrest he observed him standing in a closet next to the bedroom, and he had come into the bedroom from a different way than witness had. That Mr. Bliss asked witness if he had arrested Mr. Doyle, and he answered "yes", and that Bliss then asked witness to look, and there was a quantity of whiskey stacked along the wall that he had never observed. A blanket was so pulled back as to expose the liquor. Witness did not remember whether he and officer Bliss on the way out had discussed searching the house for whiskey. He said that he did not know whether the bench warrant gave him authority to search or not, and said: "That wasn't for me to decide." He further stated that defendant did not resist arrest, and that he had no trouble with him whatever. He had said that he was acquainted with the defendant prior to this arrest.

William L. Bliss, deputy sheriff, next testified. He said that he went with officer Pruitt to the home of defendant where Pruitt was to serve a bench warrant. Said he: "Mr. Pruitt stopped in the kitchen and talked to Mrs. Doyle, he then proceeded into the living room, into the bedroom. I proceeded through the side door of the kitchen and through a closet affair into the bed room". Witness further stated that when he walked through the closet into defendant's bedroom officer Pruitt already had defendant under arrest. He said that he noticed a blanket covering something stacked alongside the wall. He admitted that he could not see evidence of liquor, but that when he removed the blanket he found whiskey.

On cross-examination witness admitted that on coming into defendant's bedroom he asked officer Pruitt if defendant was under arrest, and on being told that he was, proceeded to look for whiskey, by removing the blanket from something stacked along the bedroom wall, and found whiskey. Witness admitted that he intended all along to make a search after service of the bench warrant, and stated that he thought the arrest gave him the right to search the house.

This closed the evidence, except that it was stipulated that the defendant possessed a retail whiskey dealer's stamp, and it was stipulated that he had previously been convicted in the court of common pleas of Tulsa County of unlawful possession of intoxicating liquor.

Counsel for defendant renewed his motion to suppress the evidence, which was overruled and judgment pronounced, as hereinbefore indicated.

■ From the evidence, the sole question that was before the trial court was whether or not a bench warrant for the arrest of a defendant to answer to a charge of unlawful possession of intoxicating liquor authorized the serving officers to enter a person's home and after his arrest, make a search for intoxicating liquor.

As already indicated, the answer must be an emphatic "No".

The bench warrant only directed the officers to arrest defendant and bring him before the court. They might have found him on the street, or when they went to his home he might have met them at the door ready to go, and they would then have had no excuse to even enter the home. Under the peculiar facts recited above, we must hold that the officers had a right to enter defendant's bedroom and make his arrest. If the whiskey had been in plain view, requiring no search, and the officers under the facts, being in a place where they had a right to be, incidental to the arrest would have been entitled to take charge of the contraband, there being a large quantity of whiskey, and to charge defendant with unlawful possession; or, if the officers had by reason of belligerent conduct of the defendant found it necessary to search the defendant for weapons and his immediate surroundings for weapons, without subterfuge, and for their necessary protection and in the process had discovered liquor, such evidence in a prosecution for unlawful possession would have been admissible.

We had hoped that these principles had been made clear in the case of Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464, though the search of a motor vehicle was there involved. Still, the principles are the same.

In the Brinegar case it was determined that the officers were justified in stopping the defendant on the highway for a minor traffic infraction and were justified in searching his person and immediate presence for firearms for their safety and protection. No firearms were discovered, but in the process and incident to such search for firearms, a partially filled bottle of whiskey was found in the glove compartment of the car. Although there was no evidence of intoxication, the amount of whiskey found would support a charge of unlawful transportation of intoxicating liquor, and would justify the officers in searching the entire car for further evidence to support such charge. From what was there said, it was made clear that had the officers not found the liquor where it was convenient to have had firearms, they would not have been justified in searching the entire car.

The bench warrant did not direct the officers to make a search, but to bring the defendant before the court to answer a charge that was then pending. That was a whiskey case, and it would stand or fall upon the evidence of possession of liquor found at the time of the previous search and not on any liquor that might be found at a later time. If the officers had good reason to believe that the defendant presently possessed an unlawful quantity of whiskey, they should, in order not to violate Art. II, § 30 of the Oklahoma Constitution, have obtained a search warrant.

The evidence disclosing no legal reason or authority for the search, the evidence obtained by such search should have been suppressed, which, if it had been, would have left no evidence to support the charge.

The defendant at the time in question did not violate the law in the presence of the officers and their sole authority was that given them by the bench warrant, which as we have seen, did not authorize a search for intoxicating liquor or any other contraband. Nothing took place to enlarge the rights and duties of the officers.

For the reasons stated, the judgment must be and is reversed, and remanded for dismissal. The defendant is ordered released.

BRETT, P. J., and NIX, J., concur.